MARIE-ELISE OTT, an Infant, by JOHN G. OTT, Her Father and Natural Guardian, Respondent, v WILLIAM BARASH, Appellant.

Second Department, July 1, 1985

**APPEARANCES OF COUNSEL**

*Maloney, Murphy, McLoone, Dobise & McGrane (John W. Hoefling* of counsel), for appellant.

*Gloria W. Ott* for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

The question for our consideration is whether the plaintiff, who was allegedly injured as the result of the negligence of a New York State employee, may maintain a cause of action for negligence against that employee in the Supreme Court after having settled a prior action against the State in the Court of Claims to recover damages for the same injuries.

The infant plaintiff in this action was allegedly injured on November 18, 1979 when she was thrown from a horse while riding at the Planting Fields Arboretum in Oyster Bay, Nassau County. It is alleged in the plaintiff's first cause of action that her fall was brought about when the defendant Barash, a groundskeeper at the arboretum, operated his motor vehicle in close proximity to the plaintiff and her horse and repeatedly sounded the horn of the vehicle, thereby causing the horse to become frightened and to rear, throwing the plaintiff to the ground. There is no dispute that, at the time of the accident, the defendant was operating a State-owned vehicle within the scope of his duties as a State employee.

A claim was commenced against the State of New York in the Court of Claims by the infant plaintiff herein and her father, John G. Ott, seeking damages in the sum of $513,906.80 (including derivative damages allegedly suffered by claimant John G. Ott). The claim alleged that the State had been negligent in hiring its employee and in failing to provide for the safety of those persons lawfully using its facilities. In addition, the claim alleged in substance that the State was vicariously liable for the tortious acts of its employee under the theory of respondeat superior. During trial in the Court of Claims, the claimants settled their claim against the State for the sum of $30,000; John G. Ott, individually and as parent and natural guardian of the infant claimant, executed a general release in favor of the State in consideration thereof. By its terms, the release discharged the State and its "heirs, executors, administrators, successors and assigns", but no provision was made for the release of its employees.

Following the settlement of the claim in the Court of Claims, the infant plaintiff commenced the instant action against defendant Barash, the State employee, in the Supreme Court, Nassau County. The amended verified complaint contained one cause of action sounding in negligence and two causes of action sounding in intentional tort, and recovery of damages in the sum of $500,000 was sought on each cause of action. The defendant

served an answer to the amended complaint which asserted, *inter alia,* that the plaintiff was barred and collaterally estopped from maintaining the instant action by reason of her prior settlement with, and release of, the State of New York.

Following the joinder of issue, the defendant moved for an order dismissing the complaint in its entirety and granting summary judgment upon the ground, *inter alia,* that the action could not be maintained because of the prior settlement and release (CPLR 3211 [a] [5]; CPLR 3212 [b]). In addition, the defendant sought dismissal of the two causes of action sounding in intentional tort (CPLR 3211 [a] [7]). By order dated June 10, 1983, Special Term (Brucia, J.), granted the motion to the extent of dismissing the latter causes of action. However, the court declined to dismiss or to grant summary judgment upon the cause of action sounding in negligence, concluding that it was not barred by plaintiff's prior settlement with, and release of, the State in the Court of Claims. The defendant now appeals to this court from so much of the order as denied that branch of his motion which was to dismiss the first cause of action and for summary judgment as to that cause of action. We conclude that there should be an affirmance.

Defendant's principal contention on appeal is that, by reason of the statutory obligation of the State of New York to indemnify its employees (Public Officers Law § 17 [3] [a]), the State is the real party in interest in this action, because any recovery by the plaintiff against the defendant employee would ultimately be paid by the State. Defendant further contends that the plaintiff's prior settlement with the State in the Court of Claims in a claim arising from the same injuries constitutes a bar to the present Supreme Court action under the doctrine of res judicata, the component doctrine of collateral estoppel, and the related prohibition against double recovery.

To determine if the State is the real party in interest in an action by an injured plaintiff against an employee of the State, by reason of the State's statutory duty to indemnify and save harmless, we look first to the statute. Public Officers Law § 17 (3) (a) provides: "3. (a) The state shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim, or shall pay such judgment or settlement; provided, that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment or duties; the duty to indemnify and save harmless or pay prescribed by

this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." The effect of this statute is to protect a State employee from financial loss occasioned by his negligence while acting within the scope of his employment (*De Vivo v Grosjean,* 48 AD2d 158, 160). It does so by establishing an employee's right to be indemnified by the State in the amount of any judgment or settlement arising under the circumstances prescribed therein. The statute does not, however, impose direct liability upon the State for the negligent acts and omissions of its employee[*] (*Olmstead v Britton,* 48 AD2d 536, 539; *see also, Naim Wassef v State of New York,* 98 Misc 2d 505, 507-508, *affd* 73 AD2d 848), nor does it purport to limit the remedies available to an injured plaintiff in a particular case (*Olmstead v Britton, supra; De Vivo v Grosjean, supra,* p 160; *Matter of Flannery v State of New York,* 91 Misc 2d 797, 803-804). In fact, Public Officers Law § 17 (5) expressly provides: "5. The benefits of this section shall inure only to employees as defined herein and shall not enlarge or diminish the rights of any other party nor shall any provision of this section be construed to affect, alter or repeal any provision of the workers' compensation law." Thus, section 17 must be construed as simply creating a cause of action on behalf of State employees against the State for indemnification, without affecting the remedies available to an injured plaintiff. The plaintiff may maintain an action against the employee tort-feasor in the Supreme Court, even where the employee's tortious conduct was committed in the course of his employment (*De Vivo v Grosjean, supra,* p 160; *Olmstead v Britton, supra,* p 539; *Matter of Flannery v State of New York, supra,* pp 803-804); or alternatively, the plaintiff may pursue a claim directly against the State, but jurisdiction over such a claim lies exclusively in the Court of Claims (*see,* Court of Claims Act §§ 8, 9; *Schaffer v Evans,* 57 NY2d 992, 994; *Parsa v*

---

* To be distinguished from Public Officers Law § 17 (3) (a), which required the State to "indemnify and save harmless its employees in the amount of any judgment * * * or * * * settlement", are those statutes providing that certain municipalities and public authorities "shall be liable" for the negligence of their officers and employees (*see, e.g.,* General Municipal Law §§ 50-a, 50-b, 50-c, 50-d [1]; Public Authorities Law § 1212 [3]; § 1276 [3]; § 1299-p [3]). Such statutes do not merely impose a duty to indemnify. Rather, they actually provide for the assumption of direct liability by the applicable municipality or authority for the acts of its employee (*Olmstead v Britton,* 48 AD2d 536, 538-539). Where direct liability has been imposed in this manner, the public employer becomes the real party in interest, even where the employee is sued individually (*Niemczyk v Pawlak,* 98 Misc 2d 532, *affd* 76 AD2d 84; *see also, Albano v Hawkins,* 82 AD2d 871).

State of New York, 100 AD2d 899, 900, *revd on other grounds* 64 NY2d 143; *Baisley v Town of Kent,* 111 AD2d 299).

The operation of section 17 is best illustrated by examining the several cases construing the provision. In *De Vivo v Grosjean* (*supra*), plaintiff was allegedly injured when the motor vehicle she was operating was struck by a vehicle owned by the State of New York and operated by a State employee in the course of his employment. Plaintiff commenced an action against the employee personally in the Supreme Court to recover damages for personal injuries and injury to her property. Defendant moved to dismiss the action, contending that the statutory indemnification provision of section 17 caused the State to be the real party in interest, thereby vesting the Court of Claims with exclusive jurisdiction over the action. The Appellate Division, Third Department, disagreed and held that the statute did not deprive an injured plaintiff of his right to bring a cause of action against a negligent State officer or employee in the Supreme Court. Rather, the statute merely created a cause of action on behalf of the officer or employee against the State for indemnification (*De Vivo v Grosjean,* 48 AD2d 158, 160, *supra*).

Similarly, in *Olmstead v Britton* (48 AD2d 536, *supra*), plaintiff allegedly suffered personal injuries when he was struck by a truck which had driven off the roadway by reason of the negligence of an officer of the New York State Police, who, in the course of his employment, had turned his State Police vehicle in front of the truck. Plaintiff commenced an action in the Supreme Court against the owner and operator of the truck and against the police officer. In addition, plaintiff served a notice of claim, seeking damages for the same injuries, against the State. The defendant police officer moved to dismiss the Supreme Court action, asserting, *inter alia,* that the State was the real party in interest by virtue of the indemnification provision of the Public Officers Law, and that the action was therefore one falling within the exclusive jurisdiction of the Court of Claims. The Appellate Division, Fourth Department, rejected this contention and concluded that the intent of the Legislature in enacting section 17 was not to impose direct liability on the State for the negligence of its officers and employees, but only to provide the officer or employee with the right to be indemnified by the State. Thus, the court held that the statute did not alter or limit the right of a plaintiff to proceed against a State officer or employee in the Supreme Court (*Olmstead v Britton, supra,* pp 537-539).

The foregoing decision notwithstanding, defendant contends on appeal that the State is the real party in interest in this

action against him, relying upon the later decision of the Appellate Division, Third Department, in *State of New York v Popricki* (89 AD2d 391). That case arose from a motor vehicle accident involving a vehicle owned and operated by defendant and a State-owned vehicle operated by one Piatt, a State employee who was then acting within the scope of his employment. The State commenced an action in the Supreme Court for property damages, and defendant, in his answer, asserted the affirmative defense that the accident was caused by the negligence of the State or "some other person". In addition, defendant commenced a third-party action against Piatt, the State employee, seeking contribution in the event that the State prevailed in the main action. The Appellate Division held that, on these facts, the third-party defendant Piatt was entitled to summary judgment dismissing the third-party complaint, because impleader is only available against one "who is or may be liable" to the defendant (CPLR 1007; *State of New York v Popricki, supra,* pp 391-393). The court reasoned that the State would be liable for any negligence of its employee Piatt under the doctrine of respondeat superior, and that the State would be obligated to indemnify Piatt for any financial loss occasioned by his negligence. Therefore, there was no basis upon which to impose liability on Piatt for contribution to defendant, and "impleader actions do not lie against one whose liability has been precluded" (*State of New York v Popricki, supra,* p 394). The court concluded that, under these circumstances, the State was the real party in interest (*State of New York v Popricki, supra,* p 394). The court was careful to note, however, that dismissal of the third-party complaint would not result in any diminution of Popricki's right to maintain a cause of action against the employee-operator for contribution because he had raised the issue of contribution as an affirmative defense in the main action. Further, Popricki would not be deprived of his right to a jury trial, because the main action was commenced by the State in the Supreme Court, where the right to a jury trial remained intact (*State of New York v Popricki, supra,* p 395).

Unlike *Popricki,* the case before us does not involve the propriety of a third-party action under CPLR 1007. Moreover, it is clear that dismissal of the first cause of action in the instant matter would result in an impairment of plaintiff's right to attempt to secure a judgment against the employee-operator in a Supreme Court action, where her right to a jury trial has been preserved. We conclude, therefore, that the State is not the real party in interest in this action by reason of its statutory obligation to indemnify its employee (Public Officers Law § 17 [3] [a];

[5]; *Olmstead v Britton*, 48 AD2d 536, *supra; De Vivo v Grosjean*, 48 AD2d 158, *supra*), and that this action against the employee may be properly maintained in the Supreme Court.

Our conclusion that the State of New York is not the real party in interest in the Supreme Court action is further supported by General Obligations Law § 15-108, which provides:

"§ 15-108. Release or covenant not to sue

"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person".

In determining the proper application of this statute to the instant case, a distinction must be drawn between the principles of contribution and indemnification. Contribution involves the apportionment, according to fault, of liability among several tort-feasors who share culpability for an injury, and the right to contribution among joint tort-feasors exists even where the duty owed to the injured plaintiff and, hence, the theory of recovery, is distinct as to each such tort-feasor (CPLR art 14; *McDermott v City of New York*, 50 NY2d 211, 216; *Riviello v Waldron*, 47 NY2d 297, 306; *Dole v Dow Chem. Co.*, 30 NY2d 143, 148-149; *County of Westchester v Becket Assoc.*, 102 AD2d 34, 46, *appeal dismissed* 64 NY2d 734). In contrast, indemnification involves a shifting of the entire loss, from one who has been compelled to pay for that loss to another. The right to indemnification may be created by express contract or, as in the case at bar, by statute (Public Officers Law § 17); the right may also be quasi-contractual, i.e., implied by law out of fairness and equity to prevent

unjust enrichment to the actual wrongdoer while relieving the party who had paid for the loss of an unjust burden (*Mauro v McCrindle,* 70 AD2d 77, 80-83, *affd* 52 NY2d 719; *McDermott v City of New York, supra,* pp 216-217; *Riviello v Waldron, supra,* p 306; *County of Westchester v Becket Assoc., supra,* pp 46-47). Perhaps the most frequently cited example of the operation of the principle of indemnification is that which arises in the employer-employee relationship. Under the doctrine of respondeat superior, an employer is vicariously liable for a tort committed by his employee while the latter is acting within the scope of his employment (*Riviello v Waldron, supra,* p 302). Thus, a plaintiff who has been injured due to the tortious conduct of an employee, committed while that employee was acting within the scope of his employment, may look to the employer to recover, although the employer has committed no actual wrong. However, the vicariously liable employer, upon whom liability has been imposed without fault, may then seek indemnification, or reimbursement, from the primarily liable employee (*Mauro v McCrindle, supra,* pp 82-83; *McDermott v City of New York, supra,* p 218, n 4; *Riviello v Waldron, supra,* p 306; *County of Westchester v Becket Assoc., supra,* pp 46-47). Of course, the statutory indemnity provision in this case achieves a very different result. Under Public Officers Law § 17 (3) (a), the State, although only vicariously liable for any injury caused by its employee's tort, is obligated to indemnify the employee, the party actually at fault, in the amount of any recovery had against him.

Because the relationship between the defendant and the State of New York in this case was, by reason of Public Officers Law § 17 (3) (a), that of indemnitee and indemnitor, the provisions of General Obligations Law § 15-108 do not bar this action. That section is applicable only to contribution rights, as set forth in CPLR article 14, and is inapplicable to causes of action involving indemnification, as is here the case (*Mead v Bloom,* 94 AD2d 423, 424-425, *affd* 62 NY2d 788; *McDermott v City of New York, supra,* pp 219-220; *Riviello v Waldron, supra,* pp 306-307). Thus, the release given by plaintiff to the State, which may have relieved the State from any liability for contribution, did not similarly relieve the State of its duty to indemnify its employee. Moreover, a party who is injured as the result of a negligent act by an employee, committed in the course of his employment, is not foreclosed by General Obligations Law § 15-108 from seeking recovery from the vicariously liable employer under the doctrine of respondeat superior, notwithstanding the plaintiff's prior settlement with, and release of, the employee (*Riviello v*

*Waldron, supra*). Conversely, where, as here, the employer who is vicariously liable for its employee's negligence settles with the injured party, that injured party may nevertheless recover against the employee, but any verdict against the employee will be reduced by the amount of such settlement (*Mead v Bloom, supra*).

We must also resolve the further issue of whether plaintiff is precluded from maintaining this action by reason of having first prosecuted a claim against the State of New York in the Court of Claims. Resolution of this question involves application of the doctrine of res judicata, the component principle of collateral estoppel and the prohibition against double recovery.

Briefly stated, the doctrine of res judicata, or claim preclusion, "holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" (*Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485; *see also, Ryan v New York Tel. Co.,* 62 NY2d 494, 500; *Matter of Reilly v Reid,* 45 NY2d 24, 27; *Chisholm-Ryder Co. v Sommer & Sommer,* 78 AD2d 143, 144; 9 Carmody-Wait 2d, NY Prac § 63:196, at 197). A component of the res judicata doctrine is the principle of collateral estoppel, or issue preclusion, which "permits in certain situations the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided" (*Gramatan Home Investors Corp. v Lopez, supra,* p 485; *see also, Ryan v New York Tel. Co., supra,* p 500; *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65; *Baxter v Fulton Ice & Cube Co.,* 106 AD2d 82, 84; *Chisholm-Ryder Co. v Sommer & Sommer, supra,* p 144; 9 Carmody-Wait 2d, NY Prac § 63:204). It is evident that a general prerequisite to invocation of either res judicata or collateral estoppel is the existence of a final judgment, i.e., a final judicial determination which necessarily decided the very cause of action or issue that a party now seeks to litigate in a subsequent action or proceeding (*Peterson v Forkey,* 50 AD2d 774; *see also,* 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5011.10).

In this case it is clear that the foregoing prerequisite was not met. The proceedings in the Court of Claims were not terminated by entry of a final judgment or other judicial determination on the merits. Rather, the claim was terminated upon the execution of a settlement and release. The settlement, prior to the entry of judgment, served to "finalize the action without

regard to the validity of the original claim, and the action was accordingly considered, in contemplation of law, as if it had never been begun" (*Peterson v Forkey, supra,* p 775, citing *Yonkers Fur Dressing Co. v Royal Ins. Co.,* 247 NY 435, 444; *see also, Mandracchia v Russo,* 53 Misc 2d 1018). Therefore, there is no basis upon which to apply either res judicata or collateral estoppel.

For similar reasons, we conclude that plaintiff is not precluded from maintaining her action in the Supreme Court under the principle prohibiting double recovery for the same injuries. Simply put, this doctrine limits an injured party's recovery to the actual loss he suffered, and no more (*see generally, Zarcone v Perry,* 78 AD2d 70, 79-81, *affd* 55 NY2d 782, *cert denied* 456 US 979). However, like res judicata and collateral estoppel, application of the double recovery rule is predicated upon the existence of a prior final judgment granting recovery, and not merely a settlement between the parties. For example, in *Zarcone,* plaintiff brought an action in Federal court to recover damages allegedly suffered as the result of defendants' violations of 42 USC § 1983. After trial, plaintiff recovered judgment against two defendants in the sums of $140,000 and $81,000, respectively. He then commenced a State court action against the same defendants seeking damages under a variety of common-law tort theories. We dismissed plaintiff's causes of action against those defendants, stating, *inter alia:* "Where, as in this case, the plaintiff has already recovered adequate damages on the same facts constituting the injury, and according to a charge which submitted the same elements of damages, we hold that in justice and fairness, no further recovery should be allowed" (*Zarcone v Perry, supra,* p 81).

In a sharp contrast to *Zarcone,* the instant case contains no judgment and, hence, no final judicial award of damages to plaintiff, nor does the parties' settlement afford any basis for determining what, if any, elements of damages were considered by them in arriving at the settlement figure of $30,000. In sum, there is absolutely no basis, short of sheer speculation, for determining the total amount of plaintiff's loss and the extent to which she has been compensated therefor by reason of her settlement with the State of New York. Under these circumstances, there is no rational basis for applying the prohibition against double recovery. This is not to say, however, that the door has been opened to enable plaintiff to recover more than her actual loss. As we have noted, any recovery awarded to plaintiff in the Supreme Court action against the State's employee will be reduced by the amount of plaintiff's settlement

with the State itself (General Obligations Law § 15-108 [a]; ·*Mead v Bloom* 94 AD2d 423, *affd* 62 NY2d 788, *supra*). Thus, plaintiff will not recover an amount greater than the amount of her damages, as determined in this action.

In conclusion, we note that our resolution of this appeal may well expose the State to a greater financial loss than that originally contemplated by it when it agreed to the settlement of the claim against it. However, the State can protect itself in future cases by negotiating settlements of such claims that include releases of both the State itself and also of those officers and employees for whose acts the State may be vicariously liable or to whom the State may owe a duty of indemnification.

Accordingly, the order should be affirmed insofar as appealed from, with costs.

NIEHOFF, RUBIN and EIBER, JJ., concur.

Order of the Supreme Court, Nassau County, dated June 10, 1983, affirmed insofar as appealed from, with costs.