OPINION OF THE COURT
Beatrice S. Burstein, J.
Defendants Becker and Livreri seek judgment dismissing this action, pursuant to CPLR 3211 (a) (7), on the ground the complaint fails to state a cause of action. The remaining defendants seek judgment on the same grounds as well as on the ground that as to them this court lacks subject matter jurisdiction over this action (CPLR 3211 [a] [2]). The motions are consolidated for purposes of determination.
The court first turns its attention to the issue of subject matter jurisdiction. Defendants Alter, Ashe, Hynes, Mannion, Manuszewski, Palermo and Seiff are members of the board of trustees of the Clients’ Security Fund of the State of New York (the Fund), and defendant Miller is its Executive Director. The Fund was created by Laws of 1981 (ch 714), to promote public confidence in the administration of justice and the integrity of the legal profession by reimbursing losses caused by the dishonest conduct of attorneys admitted and licensed to practice law in the courts of New York State. (22 NYCRR 7200.1.) It is administered by the defendants who were appointed by the Judges of the Court of Appeals. (State Finance Law § 97-t.) It receives the bulk of its funds from an annual registration fee imposed upon lawyers. (Judiciary Law § 468-a.) The board may only pay for "losses caused by the dishonest conduct of attorneys admitted to practice in this state”; "dishonest conduct” is defined to "mean misappropriation or wilful misapplication of clients’ money, securities, or other property by an attorney admitted to practice in this state”. (State Finance Law § 97-t [4].)
Plaintiff claims he is an attorney, duly admitted to practice in New York, who was defamed by a statement that he was a disbarred attorney who had converted an escrow fund to his *256 own use. This statement, he alleges, appeared in a statement of claim filed with the Fund by defendant Becker acting as an attorney for defendant Livreri. He further alleges it was made maliciously and irresponsibly by these defendants with knowledge of its falsehood or with an absence of proper investigation to ascertain its accuracy.
He then contends that the remaining defendants, acting in discharge of their duties and within the scope of their employment, issued a news release based upon which articles appeared in the New York Law Journal and Newsday, both of which reflected that plaintiff was a disbarred attorney whose client had been reimbursed from the Fund. The defendant trustees and Executive Director contend this court lacks subject matter jurisdiction, as this action as against them must be brought in the Court of Claims.
The general rule is that claims against officers of the State acting in their official capacity are cognizable only in the Court of Claims. (Sinhogar v Parry, 53 NY2d 424, 431 [1981]; Psaty v Duryea, 306 NY 413, 417 [1954].) However, when the State is not a real party in interest, subject matter jurisdiction will be in the Supreme Court. (Glassman v Glassman, 309 NY 436 [1956].) In Glassman the court stated that to determine if the State is a real party in interest, the court should consider the nature of the litigation, the relief sought, and the way it affects the State. Here, the State is not a named defendant, the litigation is grounded solely in tort as against State officials, the relief sought is limited to money damages, and the State will be affected only because of its obligation arising out of Public Officers Law § 17 to indemnify these defendants. Thus, plaintiff does not seek any relief in the form of declarations or injunctions or otherwise against the State. When an action is brought against State employees solely on the basis of their alleged negligence in the performance of their duties within the scope of their employment, and the State is involved only by virtue of its obligation to indemnify those State employees pursuant to Public Officers Law § 17, the State is not a real party in interest, because there has been no assumption of direct liability for the employees’ negligent acts. (Paone v Tryon, 112 AD2d 149 [2d Dept 1985].) Therefore, the Supreme Court will have jurisdiction over the matter. (Paone v Tryon, 112 AD2d 149 [2d Dept 1985], supra; Ott v Barash, 109 AD2d 254, 257 [2d Dept 1985]; Olmstead v Britton, 48 AD2d 536 [4th Dept 1975]; De Vivo v Grosjean, 48 AD2d 158 [3d Dept 1975].)
*257 On occasion the Legislature has directed that a suit not lie against an officer but must be made against the State in the Court of Claims, while also providing for indemnification. (For example, see, Mental Hygiene Law § 19.13.) As to trustees of the Clients’ Security Fund, the Legislature merely saw fit to provide indemnification. (See, State Finance Law, § 97-t [9].) The defendant Executive Director is also indemnified. (Public Officers Law § 17.) Based upon all of the aforesaid, I find in this case the State is not a real party in interest. Hence, I conclude this court does have subject matter jurisdiction over this action.
This raises the question of whether the trustees’ and Executive Director’s second basis for dismissal of the complaint has merit. These defendants contend they have absolute immunity from suits regarding the performance of their official duties while plaintiff argues that these defendants are not absolutely privileged because their authority and the responsibilities with which they are entrusted are narrow, and they do not function in a "policy-making” capacity, except to a limited extent.
Absolute privilege in cases of defamation is afforded those officials of the State who are principal executives of the State government or who are entrusted by law with administrative or executive policy-making responsibilities of "considerable dimension”, in order to protect "those to whose official functioning it is essential that they be insulated from the harassment and financial hazards that may accompany” actions for defamation. (Stukuls v State of New York, 42 NY2d 272, 278 [1977].) The duties of those defendants who serve as members of the board of trustees of the Clients’ Security Fund are set forth in State Finance Law § 97-t. This statute places sole responsibility for the administration of the Fund on the members of the board of trustees. They have the power "to receive, hold, manage and distribute the funds * * * in [their] discretion * * * to the extent they may deem proper and reasonable” for the purposes set forth in the statute. They also possess the authority to adopt regulations to govern the administration of the Fund and to establish procedures for presentation, consideration, allowance and payment of claims. They are vested with the sole discretion of determining the merits of each claim, the amount of reimbursement to be granted, if any, and the terms under which reimbursement is made. They have the right and power to employ and, at their pleasure, remove any personnel, and even the power to fix *258 personnel compensation, within limits. Based upon this statutory grant of power I find those defendants who are trustees are entrusted with all of the administrative responsibilities regarding the Fund, and these responsibilities include policy making at a very high level. The trustees also have the power to commence actions in court. (See, Clients’ Sec. Fund v Grandeau, 131 Misc 2d 673 [Sup Ct, Albany County 1986].) I further find the public-at-large will benefit by providing these trustees with immunity from liability for defamation, which is the purpose of such a grant. (Stukuls v State of New York, 42 NY2d 272 [1977], supra.)
However, as to the Executive Director of the Fund, movants have not submitted any information regarding the manner in which he functions, the tasks he performs, etc., except to state that he exercises delegated power on behalf of the trustees. Therefore, at best, it appears he follows their directives and does not create policy. Consequently, I find the trustees are entitled to the immunity afforded by the absolute privilege, but defendant Miller, the Fund’s Executive Director, is not.
The court now turns its attention to the claim of defendants Becker and Livreri, who assert the claim that they too are protected by an "absolute immunity/privilege”. They argue that defendant Livreri’s claim is akin to a complaint before a grievance committee of a Bar Association and, therefore, pursuant to Weiner v Weintraub (22 NY2d 330 [1968]), it is absolutely privileged. The rationale for the holding in Wiener v Weintraub is that the proceeding before a grievance committee is quasi-judicial in nature, and statements before such a body are absolutely privileged. The court also noted the public interest in encouraging the reporting of unethical conduct to a body designated for investigation, particularly in view of the fact that all papers are kept private and confidential.
Applying these concepts to the proceeding of the Clients’ Security Fund, this case demonstrates that they are not kept confidential. More importantly, they are not quasi-judicial in nature. The absolute immunity which attaches to judicial proceedings applies only to those' in court or before an officer having attributes similar to a court. (Toker v Pollack, 44 NY2d 211 [1978].) An action taken by a body is quasi-judicial in nature only when the body is authorized and required to take evidence and all interested parties are entitled to notice and a hearing. (Matter of City of Albany v McMorran, 34 Misc 2d 316 [Sup Ct, Albany County 1962, Cooke, J.].) Here, the *259 very important components of notice and a right to be heard are missing. I have considered these defendants’ other contentions, and find them without merit. Therefore, I find defendants Becker and Livreri are not entitled to an absolute privilege.
Based upon all of the aforesaid, defendants are granted judgment dismissing so much of this action as is against defendants Alter, Ashe, Hynes, Mannion, Manuszewski, Palermo and Seiff, on the ground their acts are absolutely privileged. In all other respects their motions are denied.