Robert **FELDSTEIN**, Plaintiff,

v.

**NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, et al., Defendants.**

No. CV–92–0879.

United States District Court, E.D. New York.

Oct. 20, 1992.

---

Robert Feldstein, pro se.

Amy B. Carron, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Robert Feldstein filed the present Section 1983 complaint against defendants New York City Department of Consumer Affairs ("DCA"); Mark Green, Commissioner; and Karen Miller, Chief Hearing Officer, on May 7, 1992. The complaint, which asserts that defendants violated Feldstein's rights by causing him to be dismissed from his position at DCA and by maintaining stigmatizing information in his employment records, seeks reinstatement and a name-clearing hearing.

Feldstein was hired by DCA as a probationary legal assistant on September 6, 1990, and was dismissed on September 30. Feldstein instituted an Article 78 proceeding in New York State Supreme Court on December 17, 1990, raising various state and federal claims (including claims grounded in 42 U.S.C. § 1983). In that proceeding, Feldstein contended that he had been dismissed in retaliation for his "whistleblower" lawsuit then (and now) pending against his previous state employer.[1] Feldstein sought, *inter alia,* a name-clearing hearing and reinstatement.

In denying his application for a name-clearing hearing in its preliminary order of July 8, 1991, Index No. 47110/90, the court noted that Feldstein made no allegation that DCA had disseminated any false information to outside persons. Moreover, as to the substantive issue—whether DCA's asserted reasons for dismissing Feldstein were both factually accurate and legally sufficient—the court ordered a hearing. Central to the resolution of the dispute was a September 13, 1990 letter from DCA Commissioner Green to the Department of Personnel requesting Feldstein's termination. The letter cited two separate occasions during Feldstein's first few days of

---

**1.** On March 14, 1990, Feldstein was dismissed from an administrative position at the Arthur Kill Correctional Facility of the New York State Department of Corrections. He commenced his action under New York Civil Service Law on March 25 of that year.

work in which Feldstein concealed extended or unexcused work absences by falsifying his time records.

Upon considering the evidence, the court subsequently issued an order, dated December 24, 1991, making explicit findings that Feldstein had failed to raise a material issue of genuine fact as to the accuracy of the allegations in the letter. Accordingly, the court denied Feldstein's petition in its entirety. Despite Justice Sklar's instruction to the parties to "settle judgment," neither party ever did so.

Defendants now move to dismiss the federal complaint on the grounds that principles of collateral estoppel bar Feldstein's claims.

## DISCUSSION

■ As an initial matter, this court will treat the present motion as one made for summary judgment. The parties have submitted matters outside the pleadings in the form of affidavits and exhibits, thereby effectively converting the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Fed.R.Civ.P. 12(b).

■ Under 28 U.S.C. § 1738, federal courts are obliged to give state court judgments the same preclusive effect as would be accorded by the state courts. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81–84, 104 S.Ct. 892, 896–898, 79 L.Ed.2d 56 (1984). In New York courts, "the doctrine of collateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Murphy v. Gallagher*, 761 F.2d 878, 881 (2d Cir.1985). More specifically, the party seeking to invoke collateral estoppel (also

referred to as "issue preclusion") must demonstrate both that the same issue was necessarily decided in the prior action, and that there was a full and fair opportunity to contest the decision now claimed to be controlling. *Id.* at 882.[2]

■ Bearing these principles in mind, the court now turns to the specific claims raised in this action. It is well established that "[a] government employee's liberty interest is implicated where the government dismisses him based on charges 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.'" *Brandt v. Board of Co-op. Educ. Svcs.*, 820 F.2d 41, 43 (2d Cir.1987) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)). In such cases, due process entitles the employee to a name-clearing hearing, but only if the charges are alleged to be false, and only if the information has been, or is likely to be, disseminated outside the employing body. *Id.* at 43–46.

■ Defendants argue that "the state court expressly decided that plaintiff was not entitled to a name-clearing hearing, the identical claim he now brings to this Court." It is true that the state court based its decision on the fact that Feldstein neither alleged nor proved that DCA had actually disseminated stigmatizing information about Feldstein. Given the possibility that DCA might *subsequently* have disseminated the information of which Feldstein complains—the letter written by Commissioner Green—this court cannot say that the state court's decision on this specific ground necessarily bars consideration of the issue here.[3]

**2.** An exception to this rule, stemming from the damage limitation provision applicable to Article 78 proceedings, arises when a plaintiff seeks relief that the original forum cannot award. *See Davidson v. Capuano*, 792 F.2d 275, 278–82 (2d Cir.1986). However, this exception does not apply to the plaintiff in this case since he seeks only injunctive relief, which *is* available in an Article 78 proceeding.

**3.** It is worth noting, however, that Feldstein's federal complaint suffers from the same defect as before, in that nowhere does Feldstein allege that DCA has disseminated the allegedly defamatory information, or even that DCA is likely to do so. *See Brandt*, 820 F.2d at 44–46.

Instead, Feldstein's claim in this court fails for a different reason. In its December 24, 1991 opinion, the state court actually decided the question of whether the contents of Green's letter were false. Noting that Feldstein had been given an opportunity to rebut the allegations, and had instead resorted to conclusory and wholesale denials of DCA's overall depiction of the circumstances without providing relevant and specific evidence of his own, the state court found that Feldstein failed to raise any genuine issue of material fact. Thus, Feldstein is collaterally estopped from seeking to relitigate this same question before this court, since the matter was both actually litigated and necessarily decided in the state forum. Since both *Brandt* and *Roth* establish falsity of the allegedly injurious information as a prerequisite for obtaining a name-clearing hearing, the conclusion is inescapable that Feldstein's claim must fail here as a matter of law.

■ Feldstein's claim for reinstatement fails for similar reasons. The state court expressly found that the allegations recited in Green's letter—Feldstein's unexcused absences and time-record falsification—were borne out by the evidence on the record. Accordingly, Justice Sklar concluded that:

> since the petitioner's position was, as stated by the Commissioner, one that required discretion and involved little supervision, and one which it was believed necessitated having trustworthy people, the administrative determination that one who falsifies time records cannot be considered trustworthy is a determination that this court cannot find to be arbitrary and capricious.

Since the earlier proceeding therefore resolved the issue of whether Feldstein provided evidence of bad faith by the defendants, the issue of reinstatement—like that of name-clearing—is barred as well. *See Murphy v. Town of Southampton*, 168 A.D.2d 545, 546–547, 563 N.Y.S.2d 94, 96 (2d Dep't 1990) ("Probationary employment may be terminated without a hearing and without a statement of the reasons therefor, in the absence of any demonstration

that the dismissal was made in bad faith or was unconstitutional.").

■ Finally, Feldstein argues that the doctrine of collateral estoppel does not apply in this case because Justice Sklar's order was never settled and therefore does not constitute a "final order." For this proposition he cites *Bannon v. Bannon*, 270 N.Y. 484, 1 N.E.2d 975 (1936), a separation action in which the defendant husband claimed as a defense a prior determination that the parties were not married. In *Bannon*, the New York Court of Appeals held that the prior ruling did not bar subsequent suit since the referee considered the parties' marital status only in the context of a motion for alimony *pendente lite*—a nonfinal, interlocutory decision. Distinguishing this type of decision, which is subject to change and modification, from a "final judgment," the *Bannon* court explained:

> The scope of the words 'final judgment,' it is true, should not be confined to a final judgment in an action. They may include any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal.... The essential element of a conclusive adjudication is finality of the proceedings.... All judicial and academic authority supports the rule that the issues which are litigated or may be litigated in an action can be finally adjudicated only by final judgment on the merits. Discontinuance or abatement of the action before final judgment leaves the issues open to contest in other litigation, even though they had been decided provisionally by order entered upon a motion made in the action or by interlocutory judgment. The test then is not the *form* of the decision but the *nature* of the proceedings in which the adjudication is made.

*Id.* at 490–91, 1 N.E.2d at 978 (emphasis added). On inspection, the *Bannon* court's language indicates that the final judgment requirement should be interpreted functionally. Other cases from the Court of Appeals are in agreement. *See, e.g., Slater v. American Mineral Spirits Co.*, 33 N.Y.2d 443, 446–47, 354 N.Y.S.2d 620, 622–23, 310 N.E.2d 300, 301–02 (1974) (applying res ju-

dicata to orders as well as judgments and explaining "[t]he 1971 dispositions were on the merits ... and no appeal having been taken those dispositions became final."); *Rudd v. Cornell*, 171 N.Y. 114, 127–29, 63 N.E. 823, 827–28 (1902) (listing factors necessary for estoppel and explaining that "[i]t is only a final judgment upon the merits which is competent as evidence and conclusive in a subsequent action between the same parties or their privies, and an interlocutory order is not such a judgment.").

At first glance, several lower court cases seem to advocate a more formal approach to finding preclusion. For example, in *Berkshire Nursing Center Inc. v. Len Realty Co.*, 168 A.D.2d 475, 476, 562 N.Y.S.2d 716, 717 (2d Dep't 1990), the court notes that "[b]ecause no order or final judgment was ever entered in the prior action, the doctrine of collateral estoppel is inapplicable." However, the cases upon which *Berkshire Nursing* relies—and cases following similar reasoning—involve verdicts issued or settlement agreements entered into before the court considering the case ever reached a final decision on the merits. *See, e.g., Ott v. Barash*, 109 A.D.2d 254, 262, 491 N.Y.S.2d 661 (2d Dep't 1985); *Peterson v. Forkey*, 50 A.D.2d 774, 774–75, 376 N.Y.S.2d 560, 560–61 (1975); *Mandracchia v. Russo*, 53 Misc.2d 1018, 1019–20, 280 N.Y.S.2d 429, 431–32 (1967); *see also Begelman v. Begelman*, 170 A.D.2d 562, 563–564, 566 N.Y.S.2d 337, 339 (2d Dep't 1991) (denying res judicata effect to judgment never entered because court could not determine whether dismissal was "on the merits"). Therefore, these cases differ from the instant case where Justice

Sklar's decision was on the merits and intended as final.

Other factors in this case lend further support to finding collateral estoppel despite the absence of formal entry. First, Feldstein did not raise the defendants' failure to settle judgment until oral argument; since that date, although he has requested permission from Justice Sklar to move to block entry altogether,[4] as far as this court is aware, the motion has yet to be filed. Second, Feldstein himself treated Justice Sklar's order as final by moving before the Appellate Division, First Department, to have his appeal heard on the original record and to proceed *in forma pauperis. Cf. Bell v. New York Higher Education Assistance Corp.*, 158 A.D.2d 305, 550 N.Y.S.2d 712 (1st Dep't 1990) (stating in dicta that "[a]ny complaint with respect to whether that order had, in fact, been entered was waived by reason of plaintiff's failure to raise such an argument on his prior appeals."), *dismissed on appeal*, 76 N.Y.2d 930, 564 N.E.2d 664, 563 N.Y.S.2d 54 (1990). Third, in deciding Feldstein's motion, the Appellate Division also treated the order as final.[5]

Fourth and most importantly, Feldstein had a full and fair opportunity to litigate his claims in state court; allowing him to come into federal court and raise those very same claims simply because of defendants' careless inattention to detail would elevate form over substance. This court refuses to construe the law of collateral estoppel so narrowly.

For the reasons explained above, defendants' motion for summary judgment on

---

**4.** Before 1986, there was no set time limit in which a winner of a motion must draw up an order and enter that order on the decision; rather, the winner's incentive rested on the loser's appeal time running from the moment of entry. Now, pursuant to 22 NYCRR 202.48, an order must be settled or submitted for signature within 60 days after filing of the decision. Failure to submit on time constitutes an abandonment of the motion or action unless the party seeking submission provides good cause as to why late entry should be permitted. *See In re*

*Kerrigan*, 169 A.D.2d 833, 565 N.Y.S.2d 203 (2d Dep't 1991).

**5.** In the words of the Appellate Division's February 2, 1992 order, Feldstein moved "for leave to prosecute, as a poor person, the appeal from an order of the Supreme Court, New York County, entered on or about December 24, 1991, and for leave to have the appeal heard on the original record and upon a reproduced appellant's brief, and for other relief, including a free copy of the transcript." The court denied in part and granted in part Feldstein's motion.

the grounds of collateral estoppel is hereby granted.

SO ORDERED.