Stephen G. Brooks, Esq. Formal Opinion General Counsel No. 2004-F6 Interest on Lawyer Account Fund 11 East 44th Street New York, New York 10017
Dear Mr. Brooks:
You have requested our opinion regarding whether employees of the Interest on Lawyer Account Fund of the State of New York ("IOLA Fund" or "the Fund") are entitled to defense and indemnification pursuant to Public Officers Law § 17. Your question arises because members of the Board of Trustees who administer the Fund are covered by Public Officers Law § 17 pursuant to specific statutory directive, while the relevant statutes are silent with respect to coverage of Fund staff. You also ask whether, if Public Officers Law § 17 covers IOLA Fund employees, general state funds or the IOLA Fund's own revenues finance any indemnification costs.
We conclude that employees of the IOLA Fund are eligible for state-provided defense and indemnification for acts and omissions within the scope of their employment, subject to the limitations and procedural requirements set forth in Public Officers Law §§17(3) and (4), and that general state funds would cover indemnification costs, except in specified circumstances.
STATUTORY BACKGROUND
A. IOLA Fund Framework
The Legislature created the IOLA Fund "to provide funding for providers of civil legal services in order to ensure effective access to the judicial system for all citizens of the state to the extent practicable within the means available for that purpose." Law 1983, ch. 659, § 1. Pursuant to the IOLA legislation, lawyers are required to place qualified funds in interest-bearing IOLA accounts, and the Fund receives interest earned on those accounts.See Judiciary Law § 497(4)(a). Consistent with its statutory purpose, the IOLA Fund distributes its funds "as grants and contracts to not-for-profit tax-exempt entities for the purpose of delivering civil legal services and for purposes related to the improvement of the administration of justice." State Finance Law §97-v(3)(a).
The Legislature has established the IOLA Fund as a fiduciary fund, one of seven categories of "funds of the state," in the custody of the State Comptroller. Id. §§ 97-v(1), 70(1). The Fund is administered consistently with its statutory objectives by a board of fifteen trustees, who are appointed by the Governor according to criteria and procedures set forth in State Finance Law §97-v(2). IOLA Fund trustees serve without compensation, but may be reimbursed for actual and necessary expenses. Id. § 97-v(2)(b).
The board of trustees, in turn, is authorized to "employ . . . such personnel as it may deem necessary for the performance of its functions," but generally may expend no more than ten percent of the available funds in any fiscal year on personnel and administrative costs. Id. § 97-v(3)(e). Pursuant to the IOLA Fund's enabling act, members of the board of trustees "shall be considered employees of the state for purposes of section seventeen of the public officers law." State Finance Law §97-v(2)(c). The statute is silent with respect to the status, for section 17 purposes, of IOLA Fund personnel hired by the board of trustees.
B. Public Officers Law §§ 17 and 18
Section 17 of the Public Officers Law provides that the State will defend and indemnify its employees in "any civil action or proceeding in any state or federal court arising out of any alleged act or omission" occurring while the employee was acting within the scope of his state public employment or duties. Public Officers Law § 17(2),(3). Section 17's definition of "employee" does not distinguish among state officials, board members and staff for purposes of coverage. The statute defines "employee" as "any person holding a position by election, appointment or employment in the service of the state . . . whether or not compensated, or a volunteer expressly authorized to participate in a state-sponsored volunteer program, but shall not include an independent contractor." Id. § 17(1)(a). Additionally, the officers and employees of specified public entities are designated as "employees" for purposes of section 17 coverage. Many of these designations are found in section 17 itself, see id. § 17(1)(c)-(n), while others are found in the statutes creating the specified entities, such as that governing the IOLA Board.
A public entity whose employees do not qualify for section 17 coverage may elect to defend and indemnify those employees at the entity's own expense pursuant to Public Officers Law § 18. Section 18, enacted after section 17, aimed to rationalize defense and indemnification of municipal employees and other public employees who did not work either for the State of New York or for agencies otherwise brought under the purview of section 17 by statute. SeeReport of N.Y. Law Rev. Comm., 1981 McKinney's Session Laws ofN.Y. at 2317-21 ("The enactment of [Public Officers Law] § 17 has not stemmed the Legislature's piecemeal approach to enacting defense and indemnification protection for various municipal employees and other public officers and employees omitted from [Public Officers Law] § 17. . . . [T]here is a definite need for general legislation setting up uniform provisions for the defense and indemnification of public officers and employees, like those found in [Public Officers Law] § 17 with respect to State officers and employees."). For purposes of defining the scope of coverage, section 18 focuses on the entity. Thus, it extends defense and indemnification to all members, officers and staff of a covered entity. See Public Officers Law § 18(1)(b). Section 18 defines "public entity" to include "a public authority, commission, agency or public benefit corporation, . . . [or] any other separate corporate instrumentality or unit of government," but states expressly that "public entity" does not include "the state of New York or any other public entity the officers and employees of which are covered by [Public Officers Law § 17]." Id. § 18(1)(a).
ANALYSIS
A. IOLA Staff Members are Entitled to State Defense andIndemnification
In the absence of an express statutory designation, the question of whether the employees of a public board are entitled to state defense and indemnification ordinarily involves a determination of whether the employing entity should be considered part of the State, in which case defense and indemnification would be provided pursuant to Public Officers Law § 17, or whether it operates independently of the State and should be considered a non-state public entity, thereby allowing coverage under Public Officers Law § 18. As explained above, this distinction is important because the State provides defense and indemnification of employees covered by section 17, while section 18 authorizes a covered entity to provide defense and indemnification to its personnel at its own expense. The status of an employee within the organization — as a member, officer or employee — is not relevant to that inquiry because the general provisions defining the scope of sections 17 and 18 include all personnel "in service of the state" (section 17) or all personnel of a covered "public entity" (section 18)[1].
As noted above, however, here the IOLA statute — which anticipates that the IOLA Fund trustees will hire staff — specifically designates the Fund trustees as "employees" for purposes of Public Officers Law § 17, but does not address the status of Fund staff members or indicate that the IOLA Fund, as an entity, falls under section 17. The question presented here is therefore whether the express inclusion of the IOLA trustees requires different treatment of the IOLA staff members for defense and indemnification purposes. Typically, under the statutory construction canon expressio uniusest exclusio alterius, where a law expressly applies to one group of people, it is interpreted not to apply to other groups not expressly named. See Statutes § 240, 1 McKinney's Cons. Laws of N.Y. at 411 (1971). Applying that canon here would point toward excluding IOLA Fund staff from defense and indemnification as "employees" under Public Officers Law § 17, and allowing coverage of the staff at IOLA's expense under section 18.
But the canon "`must not be utilized to defeat the purpose of an enactment or to override the manifest legislative intent.'" CraneNeck Ass'n v. New York City/Long Island County Servs. Group,61 N.Y.2d 154, 166 (1984) (statute applying explicitly to "local laws and ordinances" must also apply to restrictive covenants to fulfill legislative purpose) (quoting Matter of John P. v Whalen,54 N.Y.2d 89, 96 (1981)). Instead, the literal language of a statute must yield as necessary to effectuate legislative intent.See Statutes §§ 96, 111, 1 McKinney's Cons. Laws of N.Y. at 202, 225 (1971).
Here, several factors convince us that the specific reference to section 17 coverage of IOLA trustees should not be interpreted as evidence of the Legislature's intent to exclude IOLA employees from coverage, and thus that the failure to specify coverage of the staff was not intended to create a gap in section 17 coverage of IOLA personnel. As explained below, an interpretation excluding staff from section 17 coverage finds no support in the legislative history of the IOLA statute and is incongruous with the general application of Public Officers Law §§ 17 and 18.
1. Legislative History Does Not Evidence an Intent to ExcludeIOLA Staff from Section 17 Coverage
The legislative history of the statute creating the IOLA Fund does not reveal why only trustees were expressly granted "employee" status under section 17, or why staff might have been excluded. The proposal to structure IOLA as a fund of the State administered by a separate board of trustees was patterned after 1981 legislation establishing the Clients' Security Fund[2] The statutory language providing for section 17 coverage of the trustees of these two Funds is identical: both enabling acts contemplate the hiring of staff but designate section 17 coverage for trustees only. See State Finance Law § 97-v(2)(c),(3)(e) (IOLA); Judiciary Law § 468-b(6),(7) (Clients' Security Fund). The legislative history of the Clients' Security Fund is likewise silent as to why only those trustees were specified for section 17 coverage.
However, there is no evidence in the legislative history of the IOLA Fund indicating that the Legislature affirmatively determined that staff members should not be considered employees for purposes of Public Officers Law § 17, or that it even contemplated the subject at all. Indeed, at the time the legislation was passed, there was no Fund staff and no understanding apparent from the legislative history regarding what personnel — beyond the trustees — would be needed, or whether staffing and administrative needs might be met by hiring employees, or by using consultants, independent contractors, or other resources. As a result, the Legislature may simply have failed to consider the issue of defense and indemnification of a speculative future staff.
2. Treating IOLA Staff Differently from Trustees WouldEngender Unintended Results and be Contrary to the Treatmentof Other Entities
Having found no hint in the legislative history that lawmakers intended to deny IOLA Fund staff members the state defense and indemnification it expressly granted the trustees, we consider the statutory treatment of other entities and the fact that interpreting the statutory language strictly to deny section 17 coverage of staff may lead to unintended or even absurd results.See Statutes §§ 143, 145, 1 McKinney's Cons. Laws of N.Y. at 286, 294, 296 (1971) (legislature is presumed to have intended a reasonable, rather than an absurd result, and literal meaning of a statute may be rejected to avoid absurd construction).
Importantly, as noted, the general provisions defining the scope of sections 17 and 18 contemplate coverage of particular entities rather than distinguishing among categories of an entity's personnel. Additionally, where the Legislature specifically designates a public entity for section 17 coverage and the entity's enabling act contemplates the hiring of staff, coverage is ordinarily extended to both officers and employees. See, e.g., Public Officers Law § 17(c)-(n). In this regard, the provision extending section 17 coverage to the IOLA trustees but not to staff is highly unusual. Indeed, our research indicates that the IOLA and Clients' Security Fund statutes are unique in their express extension of section 17 coverage to officers without addressing the status of contemplated employees[3].
Similarly, we are aware of only one situation in which the Legislature has specified section 17 coverage for an entity's officers while providing for section 18 coverage for its employees. See Public Authorities Law § 1020-bb (Long Island Power Authority). However, that unusual defense and indemnification provision was a special legislative response to the unique needs of a particular entity: temporary state defense and indemnification of the officers and trustees of the Long Island Power Authority ("LIPA") was deemed necessary during an initial period before LIPA became an operational power authority and could feasibly assume responsibility for defense and indemnification of all of its personnel[4] See Law 1987, ch. 334, § 3 (providing that the provision governing section 17 coverage of trustees and officers shall not apply to causes of action arising after the Authority assumed responsibility for consumer utility service); Public Authorities Law § 1020-bb(3) (providing that section 18 applies to trustees and officers whenever provisions of section 17 do not apply). The legislative history confirms that this defense and indemnification provision was considered unique[5]. Moreover, even in that unique situation, it was intended that LIPA would ultimately bear the financial responsibility for any defense and indemnification costs incurred by the State on behalf of its trustees. See Public Authorities Law § 1020-bb(4) (providing that any costs incurred by the State in connection with section 17 coverage of the Authority's trustees and officers were to be treated as advances to be repaid by the Authority). In contrast to the unusual circumstances presented by LIPA, there is no evidence here of a legislative intent to treat IOLA trustees and staff differently for defense and indemnification purposes, and no apparent reason for doing so.
Like treatment of officers and staff for defense and indemnification is not only the norm, but it also serves a practical purpose by facilitating fiscal and judicial efficiency. Providing for section 17 coverage of both officers and employees of an entity allows for unified representation (generally, by the Office of the Attorney General) in cases where both officers and employees are named defendants and the interests of the defendants are not adverse to one another[6]. Such unified representation enables the State to provide a cohesive defense, is more efficient and conserves public resources. We find no apparent reason why the Legislature would have intended separate representation of IOLA trustees and staff even in cases where the interests of all individual defendants are aligned.
Additionally, we perceive of no reason why the Legislature would have intended that the costs for defense and indemnification of IOLA officers should be borne by the State while the costs for defense and indemnification of staff members should derive from the Fund's own revenues. As explained, if the IOLA Fund were considered a "public entity" within the meaning of section 18 rather than a state entity covered by section 17, its Board would be authorized to provide for the defense and indemnification of its employees at its own expense. See Public Officers Law §18(1)(a) (defining "public entity" to include "a commission, agency . . . or any other separate corporate instrumentality or unit of government," except the State or any entity whose employees are covered under section 17). Providing for indemnification at State expense for the IOLA Fund trustees but not the staff those trustees may hire to fulfill the Fund's mandate would thus run counter to the norm and does not appear to serve any purpose unique to IOLA.
Furthermore, the fact that the Legislature has prohibited the IOLA Board generally from spending more than ten percent of its available funds in any year on personnel and administrative costs, State Finance Law § 97-v(3)(e), weighs in favor of construing the statute to extend section 17 coverage to employees. This ten-percent cap demonstrates that the Legislature intended for the Fund to direct nearly all of its monies to providing legal services consistent with the Fund's purpose. This purpose would be undermined if, pursuant to section 18, Fund monies that could otherwise fund civil legal services were used to provide the Fund employees with the same protection against potential lawsuits available to the trustees from the State under section 17.
Given the absence of any legislative history indicating an intent to exclude IOLA staff from coverage, the lack of any apparent reason for treating staff members differently from trustees for defense and indemnification purposes, and the otherwise uniform treatment of both officers and employees of other entities covered by section 17, we think it highly unlikely that by specifying coverage of IOLA trustees, the Legislature intended to exclude IOLA staff from section 17. Rather, we believe the designation of section 17 coverage of trustees should be viewed as evidence of a legislative choice to treat IOLA as a state entity for section 17 purposes, leading to the conclusion that both trustees and staff members are entitled to defense and indemnification by the State.
3. Additional Factors Support Section 17 Coverage of IOLAStaff
Additional factors indicate that IOLA trustees and staff could be indemnified under section 17 even in the absence of an express legislative designation, bolstering our conclusion that the designation of coverage for IOLA trustees should not be viewed as an intent to exclude staff members from section 17 coverage.
As set forth above, section 17 applies to one who is "employed" by a public entity and works "in the service of the state." Public Officers Law § 17(1)(a). Staff of the IOLA Fund assist in administering a fund of the State and implementing a state statutory program in pursuit of the legislative goal of improving the administration of justice within New York. For these reasons they could be found to perform their duties "in service of the state" within the meaning of Public Officers Law § 17(1)(a). See Op. Att'y Gen. No. 99-F4 (because New York State Deferred Compensation Board is not designated as a public corporation and does not operate independently and separately from the State, board members are in service of the State in managing the deferred compensation plan on behalf of state employees).
Further, you have informed us that IOLA Fund staff participate in the state retirement system, receive full state medical and dental insurance, are subject to payroll withholding taxes, and are paid with State of New York checks — all of which are indicia of employee status for purposes of state defense and indemnification.See Op. Att'y Gen. No. 97-F1; Op. Att'y Gen. No. 88-F7. These characteristics suggest that the IOLA Fund staff members could be considered "employees" for purposes of Public Officers Law § 17, even in the absence of an express designation of coverage.
Accordingly, for all of the foregoing reasons, we are of the view that IOLA staff members, like the trustees, are entitled to state defense and indemnification pursuant to the terms of Public Officers Law § 17 for their Fund-related acts and omissions.
B. Source of Defense and Indemnification Funds
You also ask whether section 17 indemnification costs arising from the acts or omissions of IOLA Fund employees are covered by state funds or the IOLA Fund's own revenues. You note that interest from New York lawyers' IOLA trust accounts, rather than tax revenue, finances the IOLA Fund; the Fund's legal authority to spend those funds, however, comes annually from the legislature[7], and all revenues are deposited directly with the Comptroller.
We find no statutory basis indicating that the IOLA Fund should be treated any differently than other agencies whose employees are covered under Public Officers Law § 17 simply because it is not taxpayer-funded. Nothing in the legislation creating the IOLA Fund prevents it from receiving or benefitting from funds from sources other than trust account interest. In fact, "[t]he board shall have the power to receive, hold and manage any moneys and property received from any source." State Finance Law § 97-v(3)(a) (emphasis added). Moreover, in providing section 17 coverage to the trustees, the Legislature did not include language requiring the Fund to cover any indemnification costs. See id. § 97-v(2)(c). Therefore, we discern no legislative intent to require the IOLA Fund to pay indemnification costs from its own funds under circumstances where costs would not ordinarily come from an agency's funds.
Generally, the payment of judgments or settlements in suits against state departments and agencies brought in the Court of Claims, and in suits against officers and employees indemnified pursuant to Public Officers Law § 17, come from appropriations of general state funds designated for these purposes. Budget Bulletin B-1129, issued by the Division of the Budget on October 27, 1992 (copy enclosed), describes other litigation costs the IOLA Fund would need to pay from its own funds, should it incur them. These include, for example, backpay awards in any court against the State or the IOLA Fund; monetary awards in any court, other than the Court of Claims, against the State or the IOLA Fund; and certain counsel fees and other litigation expenses awarded under the Equal Access to Justice Act. See Op. Att'y Gen. No. 98-F11. Other examples are listed in the Bulletin.
CONCLUSION
In sum, we conclude that IOLA Fund staff members are eligible for state-provided defense and indemnification subject to the limitations and procedural requirements set forth in Public Officers Law § 17(3) and (4). Further, we conclude that state budget appropriations will cover section 17 indemnification costs, except under special circumstances set forth in Budget Bulletin B-1129.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] The statutory definitions expressly exclude independent contractors. See Public Officers Law § 17(1)(a); id. § 18(1)(b).
[2] The IOLA Fund legislation derives from a proposal of a special committee of the New York State Bar Association that studied and reported on the issue of legal services programs. See Report tothe President of the New York State Bar Association From theSpecial Committee to Study Alternative Sources of Funding forLegal Services in New York, and for Programs Affecting theAdministration of Justice (1983) (hereinafter "Special Committee Report"). The Special Committee Report cites to the Clients' Security Fund legislation as a model for the IOLA structure. SeeSpecial Committee Report, at 32. We note that this office has previously represented a non-trustee staff member of the Clients' Security Fund pursuant to Public Officers Law § 17. See Schettinov. Alter, 134 Misc.2d 254, 256 (Sup.Ct. 1986), rev'd in part,140 A.D.2d 600 (2d Dep't 1988).
[3] In other cases, the Legislature has specified section 17 coverage only of a board's members or officers because the board's enabling act does not authorize the entity to hire its own staff. Often, those statutes provide for the board to receive staff assistance from a state agency. See,_e.g., Mental Hygiene Law §7.05(l),(m) (Mental Health Services Council); id. § 19.05(i),(j) (Advisory Council on Alcoholism and Substance Abuse Services); id. § 19.42(f),(h) (Medical Advisory Panel); Transportation Law §402(1),(2) (Republic Airport Commission).
[4] As a public authority, LIPA ordinarily would be authorized to defend and indemnify its personnel under Public Officers Law § 18.See Public Officers Law § 18(1)(a). However, according to memoranda submitted in support of the bill, initial state defense and indemnification of the trustees was necessary because LIPA was unable to obtain insurance to cover its officers and trustees without a stream of income in place and the controversial nature of LIPA's statutory mandate placed the officers and trustees at high risk of liability exposure. See Bill Jacket for ch. 334 (1987), at 5, 12.
[5] See Memorandum of Division of Budget (July 28, 1987), reprintedin Bill Jacket for ch. 334 (1987), at 11 ("We believe that the unique nature of LIPA and its controversial mandate make it appropriate that indemnification be provided at this time; the provisions of this bill . . . reflect these unique circumstances."); Memorandum of Department of Law (July 21, 1987),reprinted in Bill Jacket for ch. 334 (1987), at 13 ("This bill will make the Long Island Power Authority a unique entity as far as defense and indemnification are concerned. State created government entities are either covered by section 17 or section 18
of the Public Officers Law. . . . No other hybrid entity exists.").
[6] Even where interests are adverse and independent counsel is necessary, the State compensates such counsel and indemnifies the employee defendants. See Public Officers Law § 17(1)(b) ("[T]he employee shall be entitled to representation by private counsel of his choice . . . whenever the attorney general determines . . . that representation by the attorney general would be inappropriate, or whenever a court of competent jurisdiction . . . determines that a conflict of interest exists and that the employee is entitled to be represented by private counsel of his choice. . . . Reasonable attorneys' fees and litigation expenses shall be paid by the state to such private counsel from time to time during the pendency of the civil action or proceeding subject to certification that the employee is entitled to representation.").
[7] You have explained that the IOLA Fund provides estimates of its annual revenues and expenditures to the Governor, who includes them in his proposed budget. See, e.g., 2004-05 Executive Budget, Appendix I, at 329-30. The Legislature renews the Fund's authority to spend the funds each year when it passes the state budget, which includes an appropriation for administrative services and expenses of the Fund, and an appropriation for the payment of grants. See, e.g., Public Protection and General Government Budget Bill, S.6050-B/A.9550-B (2004-2005), p. 124.