■ METROPOLITAN DRY CLEANING MACHINERY Co., INC., Respondent-Appellant, v. ANDREW HIRSCH, Appellant-Respondent.— In an action to recover damages for conduct by defendant in violation of his obligations as an employee of plaintiff (first cause) and for conspiracy to destroy plaintiff's business (second cause), (1) defendant appeals from so much of an order of the Supreme Court, Queens County, dated March 19, 1971, as denied the branch of his motion which was to dismiss plaintiff's first cause of action under CPLR 3211, 3212 or, in the alternative, for leave to supplement his answer so as to plead a defense of release; and (2) plaintiff cross-appeals from so much of the order as (a) granted the branch of defendant's motion which was to dismiss plaintiff's second cause of action and (b) severed that cause. Order modified by (1) striking from the first decretal paragraph thereof the words " to the extent hereinafter provided ", (2) striking from the second decretal paragraph thereof the words " the second cause of action in " and " severed and "; and (3) striking out the third decretal paragraph thereof. As so modified, order affirmed, without costs, so that the order shall be to the effect that the complaint is dismissed in its entirety. Plaintiff brought this action in May, 1966, alleging breach of a fiduciary duty as plaintiff's sales manager and a conspiracy between defendant and the officers of Washex Machinery Corporation (" Washex ") to terminate an exclusive franchise plaintiff had to distribute dry cleaning and laundry equipment manufactured by Washex. Defendant is alleged to have violated his fiduciary relationship (first cause of action) by (a) negotiating with Washex for employment; (b) maligning plaintiff and its officers to Washex; (c) inducing two of plaintiff's employees to leave its employ and enter the employ of Washex; (d) wrongfully inducing Washex to terminate plaintiff's distributorship; and (e) aiding and abetting Washex to place itself in a favored position for termination of plaintiff's distributorship. Plaintiff's second cause of action alleges that defendant conspired with the principal officers of Washex to injure plaintiff and destroy its business. It is specifically alleged, *inter alia,* that defendant, while an officer of plaintiff corporation with confidential sales information, sought to direct plaintiff's customers to Washex, which planned to sell its products directly to the consumer rather than through a distributorship, neglected to perform his duties as sales manager for plaintiff and solicited certain of plaintiff's key employees to terminate their employment with plaintiff and become employed by Washex; and that, as a direct result of the conspiracy, Washex unilaterally terminated plaintiff's exclusive distributorship of Washex products. In May, 1967 plaintiff also commenced an action in the United States District Court for the Eastern District of New York against Washex. Six causes of action were alleged therein, namely, (1) unfair completion, in the hiring away of several of plaintiff's key employees; (2) conspiracy with defendant in the action before us to destroy plaintiff's business by luring away other employees; (3) unjustified termination of plaintiff's distributorship agreement; (4) fraud in the formulation and termination of plaintiff's distributorship agreement; (5) restraint of trade; and (6) price discrimination. The specific allegations with respect to the Federal action in

many respects paralleled the allegations set forth in the instant action. The action at bar was noticed for trial in April, 1969. In June of 1969, however, the Federal action against Washex reached trial. After six days of trial and during plaintiff's case, a settlement was reached. Pursuant thereto plaintiff discontinued its action against Washex, with prejudice, and executed a general release in favor of Washex, all in consideration of $10,000. The release did not contain any admission of liability on the part of Washex and, more importantly, contained no restrictions or reservation of plaintiff's rights against defendant at bar. Defendant contends that the release obtained by Washex is binding between the instant parties and therefore the entire complaint should be dismissed. His position is that both the Federal action against Washex and the instant action against him essentially allege a conspiracy between them to put plaintiff out of business; that therefore both he and Washex, being alleged coconspirators, are also joint tortfeasors; and that consequently the release by plaintiff of Washex perforce releases him (*Milks* v. *McIver*, 264 N. Y. 267). Plaintiff contends that, even assuming *arguendo* that defendant and Washex were joint tortfeasors, the release given to Washex was never intended to release defendant. Its position is that the courts of this State have uniformly held that it would look behind a release when an issue is raised with respect to what and whom the parties intended to release. Indeed, courts have always interpreted releases so as to give effect to the intent of the parties. In *Cahill* v. *Regan* (5 N Y 2d 292, 299) the Court of Appeals stated, "a release may not be read to cover matters which the parties did not desire or intend to dispose of." As evidence of the fact that defendant was not intended to be released, plaintiff claims that at the time the release to Washex was executed an offer was made on behalf of defendant to pay plaintiff an additional $2,500 if the latter would release him from the action at bar, but was firmly rejected. Special Term granted defendant's motion for summary judgment to the extent of dismissing the second cause of action (for conspiracy), but denied the motion in all other respects. The learned Justice at Special Term reasoned that the release to Washex inures to the benefit of defendant in connection with plaintiff's conspiracy cause of action against him since defendant and Washex were concededly coconspirators and the release of one coconspirator, absent a reservation to the contrary, bars an action against the other. However, since the breach of a fiduciary duty is a separate and distinct tort, it was concluded at Special Term that the release is not binding upon plaintiff as to that cause of action. In our opinion the release bars plaintiff's entire action. The principle underlying the rule of *Milks* v. *McIver* (264 N. Y. 267, *supra*), that a release of one joint tortfeasor releases all, absent a reservation to the contrary, is founded on the equitable notion that the law will not permit a double recovery. The law presumes that a settlement with one of the joint tort-feasors represents a full satisfaction of the entire claim (see *Derby* v. *Prewitt*, 12 N Y 2d 100). Since we feel that the gravamens of both the Federal action and the instant action essentially spell out a conspiracy to put plaintiff out of business arising out of the same series of acts, however many theories of law recovery was sought under, there was but one injury and accordingly only one recovery is permitted. The alleged acts by which it is claimed defendant breached his fiduciary trust were part and parcel of the alleged conspiracy. Indeed, the economic injury suffered by plaintiff as a result of the alleged wrongful acts of defendant and the officers of Washex (namely, termination of distributorship and ruination of plaintiff's business) is not separable so that the damages caused by each act can be distinguished; and both parties who contributed to the injury are jointly liable. In *Leonard* v. *Gottlieb* (278 App. Div.

786, mot. for lv. to app. den. 303 N. Y. 1014), cited with approval in *Lucio* v. *Curran* (2 N Y 2d 157), we held that the same acts may constitute a breach of trust as well as a fraud, but, if the alleged wrongful acts result in the same injuries, the damages from such acts are not increased and the law will permit but a single recovery. This court will not permit a plaintiff to indulge in " the niceties of legal theory " to avoid the effect of a general release and obtain a second recovery (*Pretzfelder* v. *Kahn,* 281 App. Div. 675; *Rector of St. James Church* v. *City of New York,* 261 App. Div. 614). In view of the nature of the joint liability of Washex and defendant, the release of Washex by plaintiff for $10,000 operates as a matter of law to release defendant. The intent of the parties is virtually irrelevant where there is a release of a true joint tortfeasor. In truth there has been some criticism (*Berlow* v. *New York State Thruway Auth.,* 35 A D 2d 356) and some relaxation of the old common-law rule regarding the effect of releases in connection with successive tortfeasors (*Derby* v. *Prewitt,* 12 N Y 2d 100, *supra*); However, the applicability of *Milks* v. *McIver* (264 N. Y. 267, *supra*) to joint and concurrent tortfeasors has never been overruled. Chief Judge Fuld wrote in *Derby* v. *Prewitt* (*supra,* p. 105) his answer to critics of the rule: " That the release of one tort-feasor must necessarily release all other tort-feasors who are jointly liable for the injury can hardly be regarded as an inexorable principle when its consequences may be avoided by the simple expedient of a reservation in the release of rights against the others." Rabin, P. J., Munder and Brennan, JJ., concur; Gulotta, J., dissents and votes to modify the order by denying defendant's motion as to the second cause of action as well as the first cause of action and by granting defendant leave to plead the release in mitigation, with the following memorandum, in which Hopkins, J., concurs: I agree that the two causes of action in this case are inseparable to the extent that if the general release be a complete bar to the one it would be also to the other. However, I cannot concur in the majority's reliance herein upon the common-law rule that a general release of one joint tort-feasor, without an express reservation of rights as to the others, releases all. In my view this common-law rule has been abrogated by statute. Section 15–105 of the General Obligations Law provides that, where one of several joint obligors is released without express reservation of rights against the others, the remainder are released only in accordance with a formula, the purport of which in the instant case would be to release defendant from at least one half of the total obligation. Section 15–101 provides by way of definitions that the word " obligation " includes a liability based on tort, the word " obligor " a person liable for the tort and the word " obligee " a person having a right based on a tort. Although this language seems quite explicit, a number of cases have neglected to apply it. This may stem from a misunderstanding originating with *Milks* v. *McIver* (264 N. Y. 267 [1934]), in which the Court of Appeals applied the common-law rule, although the case was decided six years after former sections 231 and 235 of the Debtor and Creditor Law were added in 1928 (L. 1928, ch. 833). These sections contained the identical language now found in sections 15–101 and 15–105 of the General Obligations Law. Since the statutory change was not discussed in *Milks,* I think we must conclude that it was not considered, rather than nullified *sub silentio.* The first decision dealing specifically with this issue was *Rector of St. James Church* v. *City of New York* (261 App. Div. 614) wherein this court held that these sections of the Debtor and Creditor Law did not apply to a tort case for unliquidated damages. Examination of the authorities relied upon in *Rector* reveals, however, that they do not support the position taken. *Milks,* which was the principal case relied upon, did

not, as previously pointed out, consider the question. *McNamara* v. *Eastman Kodak Co.* (232 N. Y. 18) was decided in 1921, seven years before the statutory provisions with which we are concerned were enacted. At that time there existed a section 230 of the Debtor and Creditor Law, which dealt with compositions by joint debtors, a very different statute from the present one. *Gavin* v. *Malherbe* (146 Misc. 51, affd. 240 App. Div. 779, affd. 264 N. Y. 403) involved a Pennsylvania accident to which our statutory law did not apply in the absence of a showing that Pennsylvania had a similar statute. There was no such showing. Therefore the common law governed and the sections were not applicable. *Gaylor* v. *Burroughs* (248 App. Div. 915, affd. 273 N. Y. 606) and *Bossong* v. *Muhleman* (254 App. Div. 738), cited by way of contrast, both applied sections 231 and 235 to tort cases and thus tended to support a conclusion contrary to that reached in *Rector*. Aside from precedent, I believe the rationale of *Rector* is faulty. It proceeded on the theory that, because some of the formula for construing a release set forth in section 235 would not ordinarily apply to a tort (since parties to an accident do not agree in advance how they will share the burden), none of it did. This overlooked the fact that section 235 dealt with joint obligors, a broad term, which might encompass both contracts and torts. Joint tortfeasors were included, by virtue of section 231. Since the fractional share part of the formula took care of them, the alleged difficulty of applying the formula was illusory and there was no reason not to give these statutes their intended effect. Furthermore, since all tort damages are characteristically unliquidated until reduced to judgment, the holding in *Rector* that such cases were not within the scope of sections 231 and 235 rendered these sections virtually meaningless. The sections could not properly have been construed to refer solely to judgments, since section 232 (now General Obligations Law, § 15–102) dealt specifically with torts reduced to judgments. This question was recently examined by the Third Department in *Berlow* v. *New York State Thruway Auth.* (35 A D 2d 356). That court reversed an order which had dismissed a complaint on the ground that a general release without reservation of rights released the joint tortfeasor as a matter of law, holding that the question of whether all damages were satisfied remained open. The concurring opinion by Justice Greenblott points up strongly the dissatisfaction of the courts in many jurisdictions with the inequity of the common-law rule. I do not think we are free to adopt the suggestion in *Berlow* that the unreleased tortfeasor get credit only for the amount paid against the full damage as fixed by a jury, since this ignores another aspect of the statute. By its terms a defendant is entitled to have the fractional share deducted whether that is more than the sum paid or not. For example, suppose a case of two joint tortfeasors where the full damage is fixed at $10,000 by a jury, and $2,000 has been paid for a release — under the statute he would be entitled to a reduction of $5,000 for the fractional share of the releasee, even though only $2,000 was paid for the release. On the other hand, where more has been paid, e.g., $7,000, he would be entitled to a full credit of that amount, since the plaintiff is entitled to be paid but once for the same wrong (General Obligations Law, § 15–103). The mechanics for handling this by the court are set forth in CPLR 4533-b (recently added) and should obviate some of the difficulties arising in having a jury make the adjustments. Some of these thoughts were expressed by me in *Lurie* v. *Goldman* (53 Misc 2d 250), a case involving successive tortfeasors which I held was governed by the statute. The Court of Appeals in *Derby* v. *Prewitt* (12 N Y 2d 100) had a like case for decision. However, *Derby* was decided solely on the narrow ground of the distinction to be made between successive and simulta-

neous tort-feasors and held the release not to be a bar in a successive tort-feasor case, but did not discuss the broader question. Since then, seemingly, the Court of Appeals adopted the reasoning of the *Rector* case in its recent decision in *Malvica* v. *Blumenfeld* (28 N Y 2d 851). However, it is not altogether clear that they did so, since *Berlow* is also cited without being overruled. I have examined the briefs in that case as well as in the earlier case of *Rapp* v. *Myers* (291 N. Y. 709), which is also cited in *Malvica,* and do not find that the approach adopted herein was presented or argued. Rather, the advocates assumed the correctness of the earlier rulings and argued against their continuance on policy grounds. Thus, I believe that *Rector* must be repudiated and that we must recognize the applicability of sections 15–101 and 15–105 of the General Obligations Law to a negligence action wherein a general release without express reservations has been given. In view of the clear language of these statutes and their evident applicability to such a situation, to hold otherwise would constitute judicial repeal. I would reinstate the second cause of action (which is based upon the alleged conspiracy) and grant leave to defendant to plead the release in mitigation.