544 F.2d 105
 INTERNATIONAL HALLIWELL MINES, LIMITED, and La Societe
D'Exploitation et de Developpement Economique et
Natural D'Haiti, Plaintiffs-Appellants,
v.
CONTINENTAL COPPER & STEEL INDUSTRIES, INC., et al.,
Defendants-Appellees.
 Nos. 17, 371, Dockets 76-7068, 76-7098.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 17, 1976.
Decided Oct. 26, 1976.
 
 Joseph Lotterman, New York City (Lotterman & O'Callaghan, New York City, of counsel), for plaintiffs-appellants.
 James E. Akers, New York City (John W. Dickey, Richard G. Lyon, Sullivan & Cromwell, New York City, of counsel), for defendants-appellees Continental Copper & Steel Industries, Inc., Mortimor S. Gordon, Midlantic Nat. Bank, Samuel Goldman and Delia Jacobs, and Marion V. Wheeler.
 Ralph L. Ellis, New York City (John J. Grimes, Shea Gould Climenko Kramer & Casey, New York City, of counsel), for defendants-appellees Eleanora Harris, Robert Harris and Joseph Steinhardt.
 Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 In this diversity damage suit by International Halliwell Mines, Ltd. ("Halliwell"), a Canadian corporation, and its wholly-owned Haitian subsidiary, La Societe d'Exploitation et de Developpement Economique et Natural d'Haiti ("Sedren"), based on claims of unlawful domination, misappropriation of corporate opportunities, breach of fiduciary duty and corporate mismanagement, plaintiffs appeal from a judgment of the Southern District of New York, Dudley B. Bonsal, Judge, entered after a nonjury trial, which dismissed the complaint on the ground that the action was barred by a valid settlement agreement ("Settlement Agreement") entered into on March 15, 1968, approved by plaintiffs' Board of Directors in April, 1968, and unanimously ratified by Halliwell's shareholders at a meeting held May 13, 1968. The Settlement Agreement confirmed general corporate releases executed on April 1, 1967, by plaintiffs in favor of defendants, Continental Copper and Steel Industries, Inc. ("Continental"), a New York corporation, and its directors and officers who served on Halliwell's Board of Directors at the time of the alleged violations. Judge Bonsal found that plaintiffs had failed to prove that the Settlement Agreement was the product of economic duress, and that they had, in any event, waived any claim of duress by continuing to accept benefits under the challenged contract. We affirm.
 
 
 2
 On April 1, 1959, Halliwell and Sedren entered into a contract with Continental for the sale and delivery to it of 80,000,000 pounds of wire bar copper to be produced from Sedren's mine in the Republic of Haiti at the rate of 1.5 million pounds per month. The contract provided for delivery of the total amount by June 30, 1964, and that, in the event of plaintiffs' failure to make delivery by that date, Continental could terminate and collect liquidated damages or extend the time for delivery. In 1961, as a result of financing provided by Continental, it became the largest single stockholder of Halliwell, designating five nominees (named as individual defendants in this action) to sit on Halliwell's 11-member board of directors and obtaining a first mortgage in the sum of $1,500,000 on the Sedren mine. Representatives of Continental, furthermore, were placed in charge of the Sedren copper mining operation and Continental personnel, as the only signatories on Halliwell's bank accounts, assumed control of Halliwell's finances.
 
 
 3
 By July 1, 1964, plaintiffs had delivered less than one-half of the 80 million pounds of copper due under the 1959 contract. From 1964 through 1967 plaintiffs' mining operations in the Republic of Haiti continued to falter and the contractual relationship underwent a series of revisions which enabled plaintiffs to continue operating the mine with financing provided by Continental. In 1967 the parties executed agreements extending Sedren's time to fulfill its obligations under the 1959 contract and Halliwell and Sedren executed general releases in favor of Continental, reserving only their existing contract rights.
 
 
 4
 Plaintiffs attribute the deterioration of their operations and financial condition to defendants' abuse of their control over, and breach of their fiduciary duties to, Halliwell and Sedren. For example, they contend that Continental entered into contracts with Nippon Mining Company for processing and sale of Sedren's output which enabled Continental to realize large profits at Halliwell's expense and that the defendants, by various means, including threats to enforce certain provisions of the parties' 1959 agreement and of the later mortgage, forced Halliwell to enter into new agreements with Continental for the sale of copper at unreasonably low prices and to release Continental from liability for prior misconduct. As a result Continental realized a profit of over $2 million from Sedren copper production between 1964 and 1967, while Halliwell lost over $5 million during the same period.
 
 
 5
 On July 25, 1967, the Halliwell Board was reduced from 11 members to 7, of whom only one was affiliated with Continental. After extensive negotiations Continental and Halliwell on March 15, 1968, entered into an agreement (the Settlement Agreement) under which the parties terminated their prior contracts, approved the 1967 releases, and entered new agreements designed to enable Halliwell and Sedren to operate. Under the new arrangement Continental and its affiliate, Goodman & Associates, provided guarantees permitting Halliwell to obtain bank loans of $300,000 needed to continue operations, Continental extended the time of payments due on the Sedren mortgage, which had been in default since 1967, and Halliwell agreed to issue stock to Continental and make certain cash payments to it.
 
 
 6
 In April 1968 the Settlement Agreement was approved by unanimous vote of the Halliwell and Sedren boards (no longer under Continental control). On May 13, 1968, the Agreement was unanimously approved by those shareholders present in person or by proxy at a special meeting called for the purpose which was combined with the general shareholders' meeting on the same date.
 
 
 7
 Thereafter the parties performed their obligations under the 1968 agreements. As a result of Continental's guarantee, Halliwell obtained a $300,000 bank loan; Halliwell and Sedren also continued, until July 1, 1971, making payments to Continental under the Settlement Agreement.
 
 
 8
 In the meantime, on April 10, 1970, plaintiffs commenced the present action. After extensive discovery proceedings, defendants, having pleaded the Settlement Agreement as an affirmative defense, moved for summary judgment, to which plaintiffs responded with the claim that the settlement was the product of duress. In denying the motion, as well as plaintiffs' cross-motion for summary judgment, Judge Owen of the district court found that the assertion of duress raised an issue of fact. In September 1975, Judge Bonsal,[1] with the parties' consent, held a separate trial of the issues raised by the defense of settlement, recognizing that if that defense should be upheld, trial of the other issues would become unnecessary.
 
 
 9
 Both at the trial before Judge Bonsal and here plaintiffs have conceded that if the Settlement Agreement is valid, their action against Continental must be dismissed. They contend, however, that the agreement is invalid because it was the product of duress; by the time the agreement was reached in 1968, they have argued, Halliwell and Sedren had already been placed in an economic strait jacket as the result of the defendants' earlier abuse of control and breach of fiduciary duties. Judge Bonsal, after hearing the testimony of Robert Bell, Halliwell's Secretary-Treasurer from 1965 to 1967, and studying extensive documentary evidence and depositions, found that plaintiffs had failed to sustain their heavy burden of proving such duress and that by continuing to accept the benefits of the Settlement Agreement and by failing promptly to repudiate it, they had waived their right to set it aside on account of duress.
 
 DISCUSSION
 
 10
 As we have recently observed, under New York law[2] a party seeking to avoid his contractual obligations on grounds of economic duress shoulders a heavy burden. First National Bank of Cincinnati v. Pepper, 454 F.2d 626, 633-34 (2d Cir. 1972). He must show that "one party to a transaction has been so improperly imposed upon by the other that a court should intervene." Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 372 F.2d 753, 758 (2d Cir. 1967). The burden necessarily increases proportionately with the delay in initiating suit or otherwise repudiating the contract in question, since it is well established under New York law that a party asserting duress must do so promptly. Scientific Holding Co. v. Plessey Inc., 510 F.2d 15, 23 (2d Cir. 1974).
 
 
 11
 Faced with this burden, appellants nonetheless argue that Judge Bonsal should have found that in 1968 Halliwell and Sedren were in such dire economic straits as a result of the defendants' conduct during 1968-69 that they had no viable choice but to enter into the Settlement Agreement with the malefactors. Appellants urge that the agreement and releases represented the only means of preventing Continental from foreclosing on the Sedren mine and driving Halliwell into bankruptcy. Therefore, they claim the concessions should be voidable notwithstanding the independence of the Halliwell board which negotiated the agreement and the approval of the agreement by Halliwell's stockholders. The record, however, reveals that defendants did nothing amounting to duress in 1968, and yields only conflicting evidence on the issue of whether the defendants' prior conduct amounted to duress, which became operative in 1968. On this issue Judge Bonsal concluded:
 
 
 12
 "While there is some evidence of control by Continental over Halliwell during the period up to 1967 . . . the allegations of duress seem to be primarily the result of hindsight. During the period, it is equally reasonable to find that Continental was providing financial and other concessions and trying to keep Sedren afloat so that it could be a reliable source of copper ore for Continental."
 
 
 13
 Thus appellants failed to sustain their burden. On this record we cannot label Judge Bonsal's findings "clearly erroneous," United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
 
 
 14
 Appellants must also challenge Judge Bonsal's further finding that their claim of duress was in any event waived by their subsequent acceptance of benefits under the Settlement Agreement, indicating an intent to affirm rather than to avoid the obligation, see Scientific Holding Co. v. Plessey, supra, and by their two-year period of acquiescence. Appellants, however, failed to show that any necessary financial help during that period could not have been obtained from some alternative source. See Austin Instrument Inc. v. Loral Corp., 29 N.Y.2d 124, 324 N.Y.S.2d 22, 272 N.E.2d 533 (1971). In fact, Halliwell was able to obtain $1,500,000 in additional financing through a stock offering in 1969 and to continue to meet its payments under the Settlement Agreement until 1971.
 
 
 15
 Halliwell's contention that it was compelled to sign and abide by the Settlement Agreement because otherwise Continental would have foreclosed its mortgage on the Haitian mine does not withstand close analysis, since the possibility of obtaining redress through litigation remained available throughout the period. No reason is advanced to show why Halliwell could not have instituted suit and sought a stay or injunction against any foreclosure proceedings that might have been instituted by Continental.[3] Such relief might be obtained under N.Y.C.P.L.R. P 2201, which authorizes a "stay of proceedings in a proper case, upon such terms as may be just." Alternatively, appellants might have chosen to withhold mortgage payments and to counterclaim for breach of fiduciary duty in an action by Continental to foreclose the mortgage. The counterclaim might in the trial judge's discretion have been tried jointly, see Jackson v. Marcus, 18 App.Div.2d 1111, 238 N.Y.S.2d 997 (3d Dept. 1963), or if the trial court entered a judgment of foreclosure against plaintiffs, they might have sought to obtain a stay of all proceedings upon the judgment by paying the mortgage installments into court pursuant to N.Y.R.P.A.& P.L. P 1341, until determination of the validity of the 1968 Agreement. The record is conspicuously absent of any prompt attempt by plaintiffs to pursue a remedy at law for the alleged duress.
 
 
 16
 Appellants next claim that the testimony of Adolph Graetz, a Halliwell director from 1961 through 1970, was improperly excluded by the trial court. Most of Graetz' proposed testimony, as described in plaintiffs' offer of proof, would have been cumulative, relating to the financial condition of Halliwell and the actions of the Continental nominees on the Halliwell board between 1964 and 1967. This portion was properly excludable in the trial court's discretion, Federal Rules of Evidence, Rule 403; Weinstein's Evidence P 403(06) (1975). On the other hand, it was error to exclude Graetz' testimony concerning the actions of the Halliwell board during the latter half of 1967 and 1968, the period during which it allegedly was suffering economic duress attributable to the defendants. The witness Robert Bell, who had resigned from the Halliwell board in April, 1967,[4] was limited to testifying with respect to the period up to his resignation. If permitted, Graetz would have been able to testify to events thereafter. However, regardless what testimony Graetz might have given on the subject of Halliwell's economic condition at the time of the Settlement Agreement, the record is clear that his testimony could not have disturbed the undisputed evidence of subsequent events which overwhelmingly establish that Halliwell waived any claim based on duress. Accordingly, the failure to admit his testimony does not call for reversal.
 
 
 17
 Finally, appellants claim that the trial court erred in holding that the Settlement Agreement and general releases bar suit against the individual defendants, who were not parties to the agreements. Sympathetic as one may be to the enforcement of claims of breach of fiduciary duty against individuals who purport to serve two masters with conflicting interests during a process of sensitive negotiation, New York law is well settled that the release of one wrongdoer releases all those who acted as its agents, absent an express reservation to the contrary. Metropolitan Dry Cleaning Machinery Co., Inc. v. Hirsch, 38 A.D.2d 558, 328 N.Y.S.2d 349 (2d Dept. 1971); Gavin v. Malherbe, 146 Misc. 51, 261 N.Y.S. 373 (1932), aff'd, 240 App.Div. 779, 266 N.Y.S. 897 (2d Dept. 1933), aff'd, 264 N.Y. 403, 191 N.E. 486 (1934). The underlying rationale is the prevention of double recovery where the alleged wrongful acts of several individuals cause a single injury. The consideration for the release of one wrongdoer is deemed to constitute the recovery for the victim's loss, unless he has expressly indicated an intention to seek additional recovery from others. In the case at bar there is insufficient evidence to differentiate between the claims against the individual defendants and the claims against Continental, and plaintiffs failed to reserve a right to seek recovery from the individual defendants. The individual defendants are therefore released from liability.
 
 
 18
 The judgment of the district court is affirmed.
 
 
 
 [1]
 On March 17, 1975, this case was reassigned from Judge Owen to Judge Bonsal
 
 
 [2]
 Judge Bonsal determined that New York law applies to this diversity case on the basis of choice of law provisions in the 1959 and 1964 contracts and extensive dealings between the parties at their New York offices. Neither party claims error in the application of New York law to the issues on appeal
 
 
 [3]
 Although the parties have not considered it, Continental might have brought its foreclosure action in Haiti. If so, a New York court might nevertheless have enjoined the foreign action on the ground that it threatened to render the New York proceedings ineffectual, see, e. g., Adams v. Adams, 180 Misc. 578, 42 N.Y.S.2d 266 (Sup.Ct.1943), or have ordered a reconveyance by Continental to Sedren at an appropriate time in the New York proceedings, see Deschenes v. Tallman, 248 N.Y. 33, 161 N.E. 321 (1928); Restatement of Conflict of Laws 2d § 55
 
 
 [4]
 Bell was one of several independent International Halliwell directors who resigned in protest over the proposed 1967 agreement, on the ground that the terms of the agreement would force plaintiffs into bankruptcy. The proposal was nonetheless approved with the votes of Graetz, President Murray Cooper of International Halliwell, and the Continental nominees