**In re DEL–VAL FINANCIAL CORP. SECURITIES LITIGATION.**

**This Document Relates To: All Actions.**

No. MDL 872.

United States District Court, S.D. New York.

Jan. 30, 1995.

Kaplan, Kilsheimer & Fox, New York City (Robert N. Kaplan, Frederic S. Fox, of coun-

sel) and Lowey Dannenberg Bemporad & Selinger, P.C., New York City (Richard B. Dannenberg, William R. Weinstein, of counsel), for plaintiffs.

Proskauer Rose Goetz & Mendelsohn, New York City (Richard L. Spinogatti, Stephen L. Weinstein, of counsel), for defendant Deloitte & Touche.

Miller Faucher Chertow Cafferty and Wexler, Chicago, IL (Marvin A. Miller, of counsel) and Ross & Hardies, New York City (Kenneth Zuckerbrot, Philip Goldstein, of counsel), for defendants Del–Val Financial Corp., Kenbee Management, Inc., Herbert L. Golden, Bernard M. Katz, Estate of Stuart T. Parson, Ben S. Read, Jr., Myron Rosenberg, Frederick E. Smithline, James Goldstein, Joel Zbar and Roger Stern.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Before us is a motion to certify an interlocutory appeal of our November 10, 1994 Opinion and Order (the "Order") in this case. Because we fully described the facts and circumstances of this matter in that Order, see In re Del–Val Financial Corp. Securities Litigation, 868 F.Supp. 547 (S.D.N.Y.1994), we assume familiarity with it and merely sketch the bare essentials here.

Plaintiffs in this securities fraud case are a class of shareholders who bought stock in Del–Val Financial Corp. ("Del–Val"), a real estate investment trust, between March 30, 1989 and October 19, 1990. On May 6, 1991, Plaintiffs brought suit for various alleged violations of the federal securities laws and New York common law against Del–Val, Kenbee Management Inc. ("Kenbee") (Del–Val's investment manager), former officers and directors of Del–Val and Kenbee (the "Individual Defendants"), Deloitte & Touche ("D & T") (Del–Val's independent auditor), and Interstate/Johnson Lane (Del–Val's underwriter). Del–Val, Kenbee and almost all of the Individual Defendants (collectively, "Settling Defendants") have settled with Plaintiffs. We approved the Settlement Agreement on December 3, 1993. The re-

maining defendants are D & T, Interstate/Johnson Lane, and Martin Wright (former Chairman of the Board and director of Del–Val and Kenbee).

On July 12, 1991, D & T filed cross-claims for contribution against Settling Defendants. On August 12, 1991, Settling Defendants filed cross-claims for contribution and indemnification against D & T. Following the Supreme Court's decision in McDermott v. AmClyde, — U.S. ——, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) (holding that in admiralty cases where partial settlement has been reached, non-settling defendant is entitled to proportionate share judgment reduction as matter of law and may not maintain contribution action against settling defendant), Settling Defendants and D & T filed cross-motions for summary judgment on their respective claims.

On November 10, 1994, we issued the Order, which held that the proportionate share judgment credit rule announced in McDermott applies to this case. We therefore dismissed D & T's contribution claim against Settling Defendants, but left intact Settling Defendants' securities law contribution claim against D & T.[1] We also ordered that, if Settling Defendants wish to pursue their contribution claim against D & T, they must do so at the same trial at which the jury will decide the class claims.

On December 16, 1994, Plaintiffs made a motion requesting that we certify our Order to the Second Circuit for interlocutory appeal. For the reasons set forth below, Plaintiffs' motion is denied.

In order for a district court to certify one of its orders for interlocutory appeal, the party seeking certification must show that the order it seeks to appeal "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). While our Order concerns issues on which there is substantial ground for difference of opinion, Plaintiffs have not convinced us that these issues are "controlling"

---

1. We dismissed Settling Defendants' indemnification and common law contribution claims.

or that an appeal at this stage will materially advance the termination of this litigation.

The Second Circuit has held that there are often substantial grounds for difference of opinion where an issue is difficult and of first impression. *See Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990); *Chan v. City of New York,* 803 F.Supp. 710, 733 (S.D.N.Y.1992), *aff'd,* 1 F.3d 96 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993). Whether the *McDermott* rule applies in partially settled securities cases is certainly an issue of first impression in this Circuit. Having wrestled with this question ourselves, we are also prepared to admit that it is difficult and that our resolution of the issues raised by the defendants' cross-motions is "by no means the only reasonable conclusion an impartial arbiter could reach." *Chan,* 803 F.Supp. at 733. Nevertheless, the interlocutory appeal process should be used sparingly, *see Klinghoffer,* 921 F.2d at 25, and the order appealed from must concern something more than a novel and interesting issue about which there may be substantial disagreement.

■ The definition of "controlling issue of law" encompasses issues ranging from those that, if the district court's order were reversed on appeal, would terminate an action, *see id.,* at 24, to those that involve "a procedural determination that may importantly affect the conduct of an action," *see In re Duplan Corp.,* 591 F.2d 139, 148 n. 11 (2d Cir.1978). It does not, however, include the issues on which our Order ruled.

We fail to see a significant difference in the position Plaintiffs will be in if the class claims are tried according to the procedure outlined in our Order rather than according to the mechanism described in the Settlement Agreement. It is true that the procedures differ. If the action were conducted according to the provisions of the Settlement Agreement, the jury would be instructed to decide liability at the trial of the class claims against the Non–Settling Defendants, but not to apportion fault among the defendants. If the Non–Settling Defendants are found liable, the proportionate fault determination would be made at a subsequent trial where both D & T and Settling Defendants would present their contribution claims to a jury. Under our Order, there will be only one trial: Plaintiffs will try their claims against Non–Settling Defendants and Settling Defendants will try their contribution claim to the same jury. That jury will be instructed to determine liability and proportionate fault. D & T's contribution claim, having been dismissed, will not figure in the proceedings.

Plaintiffs argue that they will be so gravely prejudiced if we conduct the trial according to the procedures outlined in our Order that a costly retrial of the class claims will be necessary if our Order is subsequently reversed on appeal. They do not convince us. Throughout these proceedings, Plaintiffs' main argument in favor of their preferred two-tier trial procedure has been that it protects them from the empty-chair syndrome. They contend that if proportionate fault is determined at the trial between Plaintiffs and Non–Settling Defendants, the Non–Settling Defendants will try to lay the lion's share of the blame on the Settling Defendants, who would not be actively involved in that trial. Plaintiffs argue that this finger-pointing would cause the jury to attribute less than their actual share of fault to the Non–Settling Defendants, which under the proportionate share rule would reduce Plaintiffs' total recovery. We acknowledge that the Non–Settling Defendants may attempt to lay blame at the Settling Defendants' door. However, in this situation, the Settling Defendants' chair will not be empty at trial because they will be present to prosecute their contribution claim. Their success in that endeavor depends upon their ability to convince the jury that the Non–Settling Defendants are more responsible for any injury to Plaintiffs than they are. Thus, the empty-chair syndrome does not present a problem here.

Even if Settling Defendants do not choose to pursue their contribution claim, they must be present as witnesses at the trial of the class claims and the jury will have an opportunity to evaluate their testimony and to apportion fault accurately. Whichever procedure we use to conduct the trial, Plaintiffs will make the same claims and the jury will hear the same evidence. There is no reason

to believe that the prejudice to Plaintiffs under the procedures outlined in our Order will be sufficient to require a retrial of the class claims if we were to be reversed on appeal.

Plaintiffs also argue that our Order has impermissibly modified the Settlement Agreement by mandating a different trial procedure and that the issue of whether we had the power to do so is a controlling question of law in this case. This argument not only suffers from the same flaw as Plaintiffs' argument that reversal would require a retrial of the class claims, but it also ignores our clear statement that the Settlement Agreement did not govern the disposition of the summary judgment motions before us. *See* Order at 7–10. Our Order did not change the Settlement Agreement; instead, it held that the Settlement Agreement did not apply to the circumstances before us.

On the other hand, both Settling Defendants and D & T are in rather different positions under our Order than they would be under the Settlement Agreement. Settling Defendants must try their contribution claim much sooner under our Order than under the Settlement Agreement. D & T may not maintain a contribution action at all. Both sets of parties, however, oppose certification. Furthermore, at the trial that will take place under our Order, both will have the opportunity to present all of the same evidence and arguments that they would present in a separate trial of cross-claims for contribution.

In order to demonstrate that an order involves a controlling question of law, a party seeking certification must demonstrate at the least that the order has an important effect on the conduct of·the litigation. While our Order certainly changed the timing of the trial of the claims in this case, it did not deprive any of the parties of the opportunity to present all of the evidence and to make all of the arguments that each would have put forth under the procedure described in the Settlement Agreement. We accordingly find that our Order does not involve a controlling question of law.

Finally, the termination of this litigation would not be materially advanced by an appeal at this stage of the litigation. As we have already explained, the trial procedure we have ordered and the trial procedure set out in the Settlement Agreement do not differ in practical effect. The discovery necessary to try these claims and the evidence presented at trial are very similar, whichever procedure is used. Moreover, since the procedure provided in our Order involves one trial instead of two, it obviously will result more quickly in a final judgment on the entire controversy at the trial level. The chance is very slim that, even if we were incorrect in holding that the *McDermott* rule applies in this case, we would be ordered to retry the case if we were reversed. The Second Circuit has held that where an appeal is unlikely to result in retrial or to affect discovery significantly, certification for interlocutory appeal is not warranted. *See Isra Fruit Ltd. v. Agrexco Agricultural Export Co. Ltd.*, 804 F.2d 24, 26 (2d Cir.1986).

We are not convinced by Plaintiffs' argument that we should certify an interlocutory appeal in order to increase the pressure on D & T to settle. While settlement of this action is certainly a worthy goal, a party should not be able to manipulate the interlocutory appeal procedure to obtain a tactical advantage in settlement negotiations. *Cf. Herold v. Braun*, 671 F.Supp. 936, 938 n. 1 (E.D.N.Y.1987).

Furthermore, we are not persuaded by Plaintiffs' argument that we must grant an interlocutory appeal in order to facilitate the distribution of settlement proceeds to the class members. Plaintiffs contend that the continued validity of the Settlement Agreement is in doubt until the Second Circuit has affirmed or reversed our Order. They argue that, if we certify an interlocutory appeal of our Order, they will receive a determination of that issue much more expeditiously than if they must wait for final judgment at the trial level before appealing. Plaintiffs maintain that they should not distribute the proceeds until the continued validity of the Settlement Agreement has been conclusively established, because if the Second Circuit were to rescind the Settlement Agreement it would be impossible to reclaim the settlement proceeds from the class members. However, we are not

asked to certify the question whether the Settlement Agreement is valid and there is no apparent reason why the Court of Appeals will consider that question *sua sponte.* In the trial that we have ordered, the validity of the Settlement Agreement will not be in issue, and we see no likelihood that any verdict that might be rendered in that trial will affect the proceeds to be distributed pursuant to the Settlement Agreement. Thus we see no reason why the distribution cannot proceed if Plaintiffs so desire.

Because Plaintiffs have not convinced us that our Order involves a controlling question of law or that an interlocutory appeal would materially advance the termination of this litigation, their motion to certify our Order for interlocutory appeal is denied.

SO ORDERED.