**SKYLON CORPORATION, Plaintiff,**

v.

**GUILFORD MILLS, INC. and George Greenberg, Defendants.**

**No. 93 Civ. 5581 (LAP).**

United States District Court,
S.D. New York.

Oct. 16, 1995.

Lawrence M. Klepner, Klepner & Cayea, New York City, for plaintiff.

Peter Gruenberger, Weil, Gotshal & Manges, New York City, for defendants.

## MEMORANDUM AND ORDER

PRESKA, District Judge:

By an Opinion and Order dated September 29, 1994[1] (the "Opinion and Order"), I granted defendants' motion for summary judgment with respect to Guilford Mills, Inc. ("Guilford") and denied the motion with respect to Guilford's former president, George Greenberg ("Greenberg"). I determined there was a factual question as to whether the general release of Guilford executed by Skylon Corporation ("Skylon") also extended to Greenberg. Defendants have moved for reargument concerning the denial of summary judgment with respect to Greenberg and, in the alternative, for certification for interlocutory appeal. For the following reasons, defendants' motion for reargument is denied and defendants' motion for certification is granted.

### BACKGROUND

The factual background of this action is fully set forth in the Opinion and Order and, in general, will not be repeated.

In the Opinion and Order, I determined that there was an issue as to whether defendant Greenberg was covered by the September 1990 release. The release, by its express terms, covers Skylon, Guilford, Chuck Hayes (Guilford's CEO), Irving Schuyler (Skylon's Chairman) and Harvey Schuyler (Skylon's President). Although Greenberg is not mentioned, he nevertheless contended that he is included in the release which, he says, was intended to be plenary. Skylon, on the other hand, maintained that only those individuals to whom the release expressly refers were intended to be protected. I determined that defendants' arguments were not persuasive enough to overcome the facts that (i) the release names specific individuals and (ii) Greenberg is not among them.[2] In view of these circumstances, which raised the substantial possibility that Greenberg's omission from the release was not merely an oversight, I could not—and cannot—hold as a matter of law that the parties intended Greenberg to be released.

Defendants also argued that the issue of intent was not material because, they contended, Skylon's release of Guilford operated to release all of Guilford's agents, including Greenberg, Guilford's president. Defendants relied upon *International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.*, 544 F.2d 105, 109 (2d Cir.1979) ("*International Halliwell*"), wherein the Court of Appeals stated that "New York law is well settled that the release of one wrong-

---

**1.** *See Skylon Corp. v. Guilford Mills, Inc.,* 864 F.Supp. 353 (S.D.N.Y.1994).

**2.** I also noted that the parties chose not to employ the language so frequently used in New York to the effect that a release runs to the corporation, "its officers, directors, employees and agents, past and present."

doer releases all those who acted as its agents, absent an express reservation to the contrary." The Court went on, however, to state that the rationale underlying this rule was "the prevention of double recovery where the alleged wrongful acts of several individuals cause a single injury." *Id.* The fear was that an injured party would settle his or her claims with the principal and then sue the agent, enabling the injured to reap a total recovery in excess of the amount of his or her damages. *See Gavin v. Malherbe,* 146 Misc. 51, 261 N.Y.S. 373, 375–76 (N.Y.Sup.Ct. 1932), *aff'd,* 240 A.D. 779, 266 N.Y.S. 897 (2d Dep't 1933), *aff'd,* 264 N.Y. 403, 191 N.E. 486 (N.Y.Ct. of App.1934). However, as reflected in § 15–108 of its General Obligations law, New York no longer prevents double recoveries by construing releases to extend beyond their stated scope. *See* N.Y.Gen. Oblig.Law § 15–108 (McKinney 1989) ("GOL § 15–108"). Releases are interpreted to cover only those stated to be covered, and double recoveries are avoided by reducing an injured party's claims against non-released liable parties by the amount received in settlement from released liable parties. *E.g., Tufail v. Hionas,* 156 A.D.2d 670, 549 N.Y.S.2d 436 (2d Dep't 1989) (applying GOL § 15–108 and holding that release given to automobile owner did not release driver from liability for injuries sustained by passenger). Taking the above into account, I held that Skylon's release of Guilford does not extend to Greenberg as a matter of law and that the factual issue concerning the parties' intent with respect to Greenberg's status under the release is material thereby preventing summary judgment for Greenberg.

### DISCUSSION

### I. *Motion for Reargument*

■ After having read the parties' papers on the motion for reargument and conducted oral argument, I see no reason to change my earlier ruling. As I previously stated, under New York law, a release, like any other contractual provision, must be construed in accordance with the intent of the parties who

executed it. *Stone v. National Bank and Trust Co.,* 188 A.D.2d 865, 591 N.Y.S.2d 609, 611 (3d Dep't 1992). *See also Wells v. Shearson Lehman/Am. Express,* 72 N.Y.2d 11, 530 N.Y.S.2d 517, 521, 526 N.E.2d 8 (N.Y.Ct. of App.1988) (stating that courts generally "must look to the language of a release—the words used by the parties—to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous").

■ As I stated in the Opinion and Order, none of defendants' arguments is persuasive enough to overcome the facts that the release names specific individuals who were officers of the corporate parties, but Greenberg, former president of Guilford, is not among them. Defendants' main contention on reargument is that the absence of Greenberg from the release is not material because the release of a principal also releases the agent;[3] as explained *infra,* I do not believe that is the law of New York. In addition, even assuming that to be the law of New York, the following question arises: if it was unnecessary to include Greenberg, an agent of Guilford, why did the parties see fit to name, expressly, Chuck Hayes (Guilford's CEO), Irving Schuyler (Skylon's Chairman) and Harvey Schuyler (Skylon's President)? Skylon caused the two Schuylers to be included, and Guilford, on one hand caused Hayes to be included, but, on the other hand, did not cause Greenberg to be included. Obviously, the parties did not simply include various specified corporations and individuals unrelated to those corporations in the release; rather, the parties released specific "agents" of the released "principals". If the parties had believed that the release applied to agents simply as a matter of law, they likely would not have named *any* agents in the release. In light of these circumstances, which, as I held previously, raise the possibility that Greenberg's omission was not merely an oversight, I once again find that summary judgment is inappropriate because questions of fact remain about the parties' intent.

---

**3.** It is undisputed that if Greenberg is a "joint tort-feasor," then GOL § 15–108 applies and Greenberg is not covered by the release.

Defendants, relying on *International Halliwell,* contend that Greenberg is covered by the release as a matter of law and that although GOL § 15–108 applies to "joint tortfeasors", it does not apply to "principal" and "agent." They argue that the Court of Appeals was aware of the change in GOL § 15–108, which occurred prior to the decision in *International Halliwell,* as indicated by its decision in *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 540 F.2d 27, 39 (2d Cir.1976) (decided July 15, 1976). *Herzfeld* indicates that the Court of Appeals was aware that GOL § 15–108 changed the law with respect to joint tort-feasors; however, *Herzfeld* does not address the application of GOL § 15–108 in the context facing me now, *i.e.,* principal-agent. 540 F.2d at 38–39. In addition, *International Halliwell* did not address GOL § 15–108 in any context. 544 F.2d at 109–10. In short, one cannot assume from *Herzfeld* and *International Halliwell* that the Court of Appeals focused on the precise issue before me now.

In addition, I note that in *International Halliwell,* the Court of Appeals cited to two New York cases, *Metropolitan Dry Cleaning Machinery Co. v. Hirsch,* 38 A.D.2d 558, 328 N.Y.S.2d 349 (2d Dep't 1971) and *Gavin v. Malherbe,* 146 Misc. 51, 261 N.Y.S. 373 (N.Y.Sup.Ct.1932), *aff'd,* 240 A.D. 779, 266 N.Y.S. 897 (2d Dep't 1933), *aff'd,* 264 N.Y. 403, 191 N.E. 486 (N.Y.Ct. of App.1934), both of which pre-date the statutory change embodied in GOL § 15–108. In *Metropolitan Dry Cleaning Machinery Co.,* plaintiff alleged that defendant Hirsch had breached his fiduciary duty as plaintiff's sales manager and had conspired with officers of Washex Machinery Corporation ("Washex") to terminate an exclusive franchise plaintiff held to distribute equipment manufactured by Washex. Plaintiff also alleged that defendant conspired with Washex officers to destroy plaintiff's business. 328 N.Y.S.2d at 350. Plaintiff later reached a settlement with Washex and executed a release in its favor. *Id.,* 328 N.Y.S.2d at 351. Defendant contended that the release of Washex was also a release as to him because he and Washex were alleged co-conspirators/joint tort-feasors. *Id.* The court agreed and explained that the release of Washex barred plaintiff's entire action:

> The principle . . . [that] a release of one joint tortfeasor releases all, absent a reservation to the contrary, is founded on the equitable notion that the law will not permit a double recovery. The law presumes that a settlement with one of the joint tortfeasors represents a full satisfaction of the entire claim.

*Id.* In short, *Metropolitan Dry Cleaning Machinery Co.* does not do more than restate the old common law principle that GOL § 15–108 explicitly rejected. In addition, *Metropolitan Dry Cleaning Machinery Co.* is silent as to the principal-agent issue.

In *Gavin,* plaintiff sustained injuries in an automobile accident and brought an action against the owner of the automobile and the driver, who allegedly was employed by the owner. Plaintiff subsequently settled with and executed releases in favor of the owner/employer. The driver/employee sought to invoke the then-prevailing common law rule that a release as to one or more joint tort-feasors, without reservation, is a release as to all tort-feasors. Plaintiff contended the release did not extend to the driver/employee because, under the theory of respondeat superior, the driver/employee and the owner/employer were not joint tort-feasors. 261 N.Y.S. at 374–75. The *Gavin* court rejected plaintiff's argument:

> Although not joint tort-feasors . . . in the sense that the master was an active participant in the negligent or wrongful act, it is likewise true that the doctrine of respondeat superior puts the master and servant in such close legal relationship as to intimately affect each other in dealings with third parties. The tort committed by the servant is the same tort for which the master is liable under the doctrine of imputed negligence. Damages recovered for such a tort are entire and not severable. The servant is liable to his master for damages which the master has been compelled to pay to third persons because of the negligent or other wrongful act of the servant, where the master is not himself at fault. For the above reasons it has been held that, despite the fact the master and servant are

not joint tort-feasors, a release to one discharges the other. If that were not the case, we might have a situation where a party would settle with the master, then sue and [recover] against the servant, who would then be liable in a suit brought against him by the master, thus forcing him to pay twice for the one wrong.

*Id.,* 261 N.Y.S. at 365–76 (citations omitted). The court thus granted the driver/employee's motion. *Id.,* 261 N.Y.S. at 377.

The reliance of the Court of Appeals in *International Halliwell* on *Gavin* is a double-edged sword for defendants in the instant action. On the one hand, the *Gavin* court found that "master" and "servant" are not, technically speaking, "joint tort-feasors", a proposition which defendants urge me to adopt. On the other hand, the *Gavin* court decided that this difference was irrelevant in the context of the common-law rule concerning releases,[4] and defendants have failed to offer a reason as to why New York courts would not continue to find this technical difference irrelevant after the enactment of GOL § 15–108. Similarly, in *Magidson v. Bloom,* 170 Misc. 832, 11 N.Y.S.2d 324 (N.Y.City Ct.1939), the court found that a release to a company/employer without reservation as to the employee was also a release as to the employee; although master and servant were not technically joint tort-feasors, the common law rule applied and so the release as to the master discharged his servant. *Id.,* 11 N.Y.S.2d at 326–27. In short, defendants' reliance on *International*

*Halliwell* notwithstanding, I do not agree with their assessment of New York law.

Similarly, defendants contend that GOL § 15–108 does not apply to this action because, as a matter of New York law, a principal and its agent are not joint tort-feasors. First, defendants' contention that Greenberg is strictly, and solely, an "agent", and not a "joint tort-feasor",[5] is untenable. In its complaint, Skylon alleges, *inter alia,* that:

● Upon information and belief, by August, 1988, Greenberg and/or other employees or representatives of Guilford were informed by Rosenthal of the results of a review by Rosenthal of Northfield's account that revealed fraudulent conduct by Northfield and the Schlams.

\* \* \* \* \* \*

● Upon information and belief, when Guilford and Greenberg became aware of the fraudulent conduct by Northfield and the Schlams, they sought to eliminate Guilford's involvement with Northfield.

\* \* \* \* \* \*

● In or about mid–1988, Greenberg, on behalf of Guilford, approached Schuyler ... to discuss the possibility of Skylon's participation in the arrangement with Northfield.... Greenberg, on behalf of Guilford, proposed to Schuyler that Skylon supply piece goods and financing to Northfield in exchange for a share of the profits of Northfield.... In that regard, Greenberg and/or other employees or representatives of Guilford made various misrepre-

---

4. These principles have been restated on a number of occasions. For example, in *Smith v. Lincoln,* 52 Misc.2d 66, 275 N.Y.S.2d 74 (N.Y.Sup. Ct.1966), the court stated:

While it is true that the liability of a master [or] principal for the tort of his servant or agent is based solely on the doctrine of respondeat superior and the master or principal and his servant or agent are not joint tort-feasors, nevertheless the rules applicable to joint tort-feasors generally have been applied and the view has been taken that a release of either party to a master-servant or principal-agent relationship operates to release the other except where a releasor has reserved his right to proceed against the other party.

*Id.,* 275 N.Y.S.2d at 75–76 (citations omitted). Similarly, in *Kinsey v. William Spencer & Son Corp.,* 165 Misc. 143, 300 N.Y.S. 391 (N.Y.Sup.

Ct.1937), *aff'd,* 255 A.D. 995, 8 N.Y.S.2d 529 (2d Dep't 1938), *aff'd,* 281 N.Y. 601, 22 N.E.2d 168 (N.Y.Ct. of App.1939), the court explained that: Although in the case at bar we have the master and servant relationship between defendants, and not that of joint tort-feasor[s], I am of the opinion that the rule hereinbefore set forth is equally applicable.... "Despite the fact the master and servant are not joint tort feasors, a release to one discharges the other."

300 N.Y.S. at 395 (citations omitted). *See also Wilson v. City of New York,* 131 N.Y.S.2d 47, 50–51 (N.Y.Sup.Ct.1954) (same).

5. *See* Defendants' Memorandum of Law in Support of their Motion for Reargument or, in the Alternative, for Certification for Interlocutory Appeal ("Def.Mem.") at 6 n. 5 (arguing that "Skylon made allegations against Greenberg *only* in his representative capacity") (emphasis added).

sentations to Schuyler, upon which they intended Schuyler to rely....

\* \* \* \* \* \*

● *Greenberg represented that he intended to participate personally in the arrangement with Northfield upon his retirement from Guilford, which he represented would be in a few months, and that his initial investment in the arrangement would be $500,000....* Greenberg did not intend to participate in the arrangement with Northfield, and he did not do so. Greenberg also did not retire from Guilford until long after Skylon became involved in the arrangement with Northfield.... *Greenberg represented that he would obtain additional financing for the proposed arrangement between Northfield and Skylon from other sources....* Greenberg did not intend to obtain this additional financing and he did not do so.

\* \* \* \* \* \*

● Greenberg, on behalf of Guilford, represented that, in addition to Rosenthal, a Guilford employee was carefully monitoring Northfield's financial affairs and that such affairs were in order.... Guilford did not carefully monitor Northfield's financial affairs.

\* \* \* \* \* \*

● Greenberg and Guilford did not inform Schuyler of Northfield's and the Schlams' fraudulent conduct, nor did they provide Schuyler with the results of Rosenthal's review of Northfield's account.

\* \* \* \* \* \*

● Schuyler relied upon Greenberg's and Guilford's misrepresentations and/or omissions concerning the proposed arrangement with Northfield and upon their assessment of the financial viability of the arrangement with Northfield.

\* \* \* \* \* \*

● The information provided by Greenberg and/or other employees or agents of Guilford constituted substantially all of the information regarding Northfield's financial affairs which Schuyler, on behalf of Skylon, relied upon in determining to participate in the arrangement with Northfield.

\* \* \* \* \* \*

● In reliance upon the false misrepresentation and omissions made by Greenberg and Guilford, Skylon entered into an arrangement with Northfield....

\* \* \* \* \* \*

● In reliance upon the false misrepresentations and omissions made by Greenberg and Guilford, and without knowledge of Northfield's and the Schlams' fraudulent conduct, Skylon agreed to indemnify Guilford pursuant to a written agreement....

\* \* \* \* \* \*

● During the course of these negotiations, Greenberg and Guilford failed to inform Skylon that they had prior knowledge of Northfield's and the Schlams' fraudulent conduct.

(Compl. ¶¶ 17, 19, 22–24, 26–27, 28, 30–33, 38, 48 (emphasis added).) The allegations continue in that vein, *i.e.,* while plaintiff at times refers to Greenberg as acting on behalf of Guilford, at other times, plaintiff refers to Greenberg without reference to his status as a Guilford employee—indeed, reference is made to Greenberg's *personal* participation in the arrangement, including Greenberg's representations as to his retirement, his personal financial investment and his obtaining additional financing. At other times, plaintiff merely refers to "Greenberg and Guilford." In short, the allegations in the complaint are inconsistent with defendants' theory that Greenberg was acting only in his capacity as an "agent" and not as a "joint tort-feasor." [6]

Second, in addition to my above-stated comments concerning *Gavin,* I also note that at least one New York court has stated,

---

**6.** The term "joint tort-feasors" has been defined by one authority as follows:

Term refers to two or more persons jointly or severally liable in tort for the same injury to person or property. Those persons who have acted in concert in their tortious conduct and are, accordingly, jointly and severally liable. Those who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury.

Black's Law Dictionary 839 (6th ed. 1990) (citations omitted).

albeit in dicta, that GOL § 15–108 applies "whether tortfeasors are joint, successive or vicarious." *Tufail v. Hionas,* 156 A.D.2d 670, 549 N.Y.S.2d 436, 437 (2d Dep't 1989). This is consistent with the Second Department's earlier ruling in *Ott v. Barash,* 109 A.D.2d 254, 491 N.Y.S.2d 661 (2d Dep't 1985), in which the court stated:

> [A] party who is injured as the result of a negligent act by an employee, committed in the course of his employment, is not foreclosed by General Obligations Law § 15–108 from seeking recovery from the vicariously liable employer under the doctrine of respondeat superior, notwithstanding the plaintiff's prior settlement with, and release of, the employee. Conversely, where, as here, the employer who is vicariously liable for its employee's negligence settles with the injured party, that injured party may nevertheless recover against the employee, but any verdict against the employee will be reduced by the amount of such settlement.

*Id.,* 491 N.Y.S.2d at 667 (citations omitted).

Defendants contend that *Ott* is distinguishable because the employer and employee in *Ott* committed two separate torts. That is, the employer, the State of New York, was alleged to have been negligent in hiring the employee and in failing to provide for the safety of persons using its facilities. *Id.,* 491 N.Y.S.2d at 663. The employee, on the other hand, was alleged to have operated negligently his motor vehicle in close proximity to plaintiff and her horse and, by sounding his horn, caused the horse to throw the plaintiff. *Id.* Defendants argue that *Ott* is distinguishable on the ground that the employee and employer in *Ott* were joint tortfeasors, liable for separate acts of negligence toward the same plaintiff, whereas Greenberg and Guilford did not commit separate acts, *i.e.,* all of Greenberg's acts were committed in his capacity as Guilford's agent. However, based upon the record before me, I cannot find as a matter of law that Greenberg was acting solely in his capacity as agent at all times.

Defendants also cite to a number of decisions from other jurisdictions in support of their interpretation of GOL § 15–108; defendants contend that in some jurisdictions where contribution statutes similar to GOL § 15–108 are in place, a general release of the principal also serves to release the agent. However, defendants' reliance is misplaced for reasons in addition to the obvious reason, *i.e.,* the minimal relevance due decisions from other state courts interpreting those other states' law. For example, defendants cite to *Madison v. Superior Court (Sulejmanagic ),* 203 Cal.App.3d 589, 250 Cal.Rptr. 299 (1988). However, this case is inapposite. First, the case does not address the issue raised by the instant action, *i.e.,* release of an agent, and, second, the release in *Madison* stated that the undersigned/decedent released "Norman Madison/Westchester YMCA or any of its officers, *agents,* servants or employees." *Id.,* 250 Cal.Rptr. at 302 (emphasis added). Defendants also cite to *Randall v. Dallas Power & Light Co.,* 745 S.W.2d 397 (Tex.Ct.App. 1988), *rev'd on other grounds,* 752 S.W.2d 4 (Tex.1987), but it appears that the release "refer[red] to the employee tortfeasor with such particularity that his identity or connection with the tortious event cannot be doubted." 745 S.W.2d at 401. Defendants' reliance on *Pallante v. Harcourt Brace Jovanovich,* 427 Pa.Super. 371, 629 A.2d 146 (Ct. 1993) is somewhat more understandable, in that there the court reasoned that, because principal and agent are not joint tort-feasors, the release of the principal also released the agent. *Id.,* 629 A.2d at 149. However, the *Pallante* court also noted the split of authority on this issue among the states. *Id.,* 629 A.2d at 149–50.

In any event, I cannot find as a matter of law that the parties intended Greenberg to be released. Were only the corporate entities named in the release, it would be much easier to accept defendants' contention that the release applies by operation of law to Greenberg as a corporate agent. However, such is not the case. The fact that certain corporate officers—but not Greenberg—were named expressly in the release raises a question of fact concerning the parties' intent that cannot be resolved properly as a matter of summary judgment.

## II. Motion for Certification for Interlocutory Appeal

Defendants moved in the alternative for certification for interlocutory appeal pursu-

ant to 28 U.S.C. § 1292(b). In order for a district court to certify one of its orders for interlocutory appeal, the party seeking certification must show that the order it seeks to appeal "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal ... may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see, e.g., Dicola v. American Steamship Owners Mutual Protection and Indemnity Ass'n (In re Prudential Lines, Inc.)*, 59 F.3d 327, 332 (1995); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 23–25 (2d Cir.1990). Only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer*, 921 F.2d at 25 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978)); *see also, In re Prudential Lines, Inc.*, 59 F.3d at 332 (quoting *Coopers & Lybrand*); *In re Del–Val Fin. Corp. Sec. Litig.*, 874 F.Supp. 81, 83 (S.D.N.Y.1995) (stating that interlocutory appeal process "should be used sparingly"); *McNeil v. Aguilos*, 820 F.Supp. 77, 78 (S.D.N.Y.1993) (citing *Klinghoffer*).

First, a question is a "controlling question of law" where "reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. The defendants argue that the issue sought to be certified—whether a release that covers a principal covers the agent—is controlling. This issue indeed presents a controlling question in this case because if the Court of Appeals were to rule in defendants' favor, the litigation would come to an end.

Second, there must be substantial ground for difference of opinion on the issue for which certification is sought. Substantial ground for difference of opinion may arise where an issue is difficult and of first impression. *E.g., Klinghoffer*, 921 F.2d at 25; *In re Del–Val Fin. Corp. Sec. Litig.*, 874 F.Supp. at 83. However, "the order appealed from must concern something more than a novel and interesting issue about which there may be substantial disagreement." *In re Del–Val*

*Fin. Corp. Sec. Litig.*, 874 F.Supp. at 83. Although I am confident of my ruling on these facts, I find there is substantial ground for difference of opinion created by *International Halliwell* and, to a lesser degree, the paucity of relevant cases.

Finally, I find that immediate appeal will materially advance the ultimate termination of this litigation. If the Court of Appeals finds that I have misconstrued the applicable controlling question of law and that Greenberg is covered by the release at issue, then summary judgment would be granted in favor of Greenberg. Skylon would not be entitled to continue to press its claims against Greenberg, and the expense of discovery and a trial would be avoided.

Accordingly, defendants' motion for certification pursuant to § 1292(b) is hereby granted.

### CONCLUSION

Defendants' motion to reargue is DENIED. Defendants' motion for certification pursuant to 28 U.S.C. § 1292(b) is GRANTED.